419 So.2d 1357 (1982)
NATIONAL SAVINGS LIFE INSURANCE COMPANY, a Corporation
v.
Eula DUTTON.
80-897.
Supreme Court of Alabama.
September 17, 1982.
*1358 Robert H. Harris of Caddell, Shanks, Harris, Moores & Murphree, Decatur, for appellant.
A. P. Reich, II of Speake, Speake & Reich, Moulton, for appellees.
SHORES, Justice.[*]
This is an action in which damages were claimed for breach of a contract of health and accident insurance issued to plaintiff Eula Dutton by defendant National Savings Life Insurance Company (National), and the bad faith refusal by National to pay a claim made under the policy.
National denied any liability and charged that Mrs. Dutton had, in her application, materially misrepresented matters relating to her previous health condition. For this reason, National denied the claim, rescinded the policy, and returned all premiums.
The case was tried to a jury, which returned a verdict in favor of the plaintiff for $14,000. National filed a motion for new trial or, in the alternative, a judgment notwithstanding the verdict, contending:
(1) That the court erred in denying National's motion for a directed verdict on the tort claim of bad faith refusal to pay Mrs. Dutton's claim; and
(2) That the court erred in its instruction to the jury that the policy was subject to cancellation or rescission only if Mrs. Dutton intentionally or deliberately furnished false information to National in her application for insurance.
The trial court denied National's motion, and National appealed. We reverse and remand.
The policy was solicited by Wendell Eddy, Mrs. Dutton's son-in-law, who was a soliciting agent for National and other companies. In completing the application for the policy, he asked Mrs. Dutton a series of questions which appeared on the printed application form. He testified that he recorded her response to each question, one of which inquired of her whether she had ever had: "High or low blood pressure, pain in chest, varicose veins, disease of heart or circulatory system." To this she responded "no." Dr. Paul P. McCain, Decatur, was shown on the application as her physician.
After completing the application, Eddy forwarded it to National to be processed. When the policy was returned to Eddy for delivery to Mrs. Dutton, he reviewed it with her and pointed out to her the "NOTICE" contained in the policy, advising that it could be voided if the application contained incorrect information.
The policy became effective on September 20, 1977. On November 6, 1978, Mrs. Dutton, for the first time, consulted Dr. Tony Williams, a medical practitioner in Moulton. A medical history was taken by his nurse, which, according to Dr. William's testimony, included a statement that Mrs. Dutton "was having pain in her right side of her back and under the right shoulder," and this pain had been experienced "at intermittent intervals for two or three years."
At trial, Dr. Williams described the pain as radiating "from the right side around into the right upper quadrant, the lower part of the chest right upper quadrant." He also testified that, because of the vagueness of the symptoms and his being not quite sure what the cause was, he sent her to the hospital for further examination that same day.
As part of the admitting process, a further medical history was taken by hospital personnel, who are not medically trained.
*1359 This hospital record contains the following entry:
"NAME: Dutton, Eula NMN Date: 11-7-78
"Sex: Female
"No. 46624
"CHIEF COMPLAINT: Chest pain.
"PRESENT ILLNESS: This 57 year old WF was admitted complaining with having chest pain in left side at intervals for approximately three years. Patient states this continued and became worse one month ago. Patient states this was very severe one day prior to admission. Patient states takes medication for high blood. Patient admitted for further evaluation and treatment."
Dr. Williams testified that he admitted Mrs. Dutton to the hospital and ordered laboratory tests "to rule out the cause of chest pain." He also testified, and the hospital record reflects, that the patient had some high blood pressure readings in the days following her admission to the hospital, and Dr. Williams started her on high blood pressure medication "shortly thereafter." The patient's chart contains this entry on the night she was admitted:
"9:30 P.M. Dr. Williams visits patient, ordered medicines .... Shaking and complaining of chest pain, blood pressure 180/100, pulse 100."
The patient was dismissed after several days, and the hospital discharge summary, as reflected in the record, is as follows:
"DISCHARGE SUMMARY
"Patient: Dutton, Eula NMN Age: 57
"Sex: Female Case No: 46624
"Admitted: 11-6-78 Discharged: 11-10-78
"Physician: Dr. Tony Williams
"Provisional Diagnosis: Back Pain
"Final Diagnosis: Ulcer Disease
"Hospital Course: This 57 yr. old WF was admitted with two months history of pain in the back which radiated into the right upper quadrant. On questioning it was difficult to differentiate what the patient was calling back pain from right upper quadrant pain. I suspect this patient might possibly have gallbladder disease although the gallbladder series was within normal limits. BE was also within normal limits. Upper G. I. Series did reveal some deformity of the duodenal area. There was no noted active ulcer at the present time. EKG was essentially within normal limits except for some mild or minimal ST segment changes. SMA 12, CBC, Urinalysis were all within normal limits.
"Final Disposition: Patient was discharged from the hospital in good condition on Tagamet and Antacid."
Following her discharge from the hospital, a claim for benefits was filed with National by the hospital and Dr. Williams. The claim indicated that Mrs. Dutton's hospitalization was for an ulcer disease. Upon receipt of the claim, National sought and received, with Mrs. Dutton's authorization, the medical records relating to her hospitalization. After reviewing these records, the company denied the claim with the following letter:
"March 2, 1979
"Eula Dutton
"Route 3, Box 316
"Moulton, AL 35650
"RE: Policy No. 312252
"Mrs. Dutton, we now have the medical information we needed to complete your file ... thank you for your patience.
"According to this information, you have been experiencing chest pains in the left side for approximately three years. The information also indicates that you have been taking medication for high blood pressure. This information was not on your application for insurance. If our Underwriters had known about this past history at the time they were considering your application, they could not have issued the policy as applied for. In view of this, we must now void your policy as of the date of issue ... I'm sorry. The enclosed check represents a refund of the premiums you have paid us.

*1360 "This action, Mrs. Dutton, is based upon the information we have in file. If for any reason you feel this to be inaccurate or incomplete, we will be glad to review anything additional you might want to present us.
"Fount W. Bertram, Manager
"Claims Department"
Mrs. Dutton asked Dr. Williams to respond to this letter, which he did, he said, to document that he "was not aware that Mrs. Dutton had previous outstanding hypertension." His letter follows:
 "March 8, 1979
"National Savings Life Insurance Company
"Murfreesboro,
"Tennessee
"Re: Eula Dutton
 BD: 1-7-21
 Pol. # 312252
 # 2177-AL
"Dear Sir:
"Mrs. Dutton was first seen in my office approximately two and one-half months ago on routine examination and was found to be moderately hypertensive. Patient had had no previous history of hypertension or previous medications. Patient returned and repeat B. P. continued to be moderately elevated and patient was started on B. P. medicines approximately two months ago. Patient had also had some intermittent pain which was located in the posterior cervical area on the left side. Patient had not had medical care for this. This pain became progressively worse and patient was hospitalized on 11-6-78 and was seen in the office on the day of admission with moderately severe pain in the left posterior cervical region radiating into chest. Examination was essentially negative except for some epigastric tenderness. Patient has had no previous medications for this pain, but I felt that patient should be evaluated for this problem.
"If there is any further information needed, will be happy to send copies of records, etc.
 "Sincerely,
 "Tony L. Williams, MD."
The record also discloses that subsequent to the cancellation of the policy, Mrs. Dutton was again admitted to the hospital, complaining of chest pains. When the company declined Mrs. Dutton's request to reinstate the policy, she cashed the premium refund check and filed this lawsuit.
On appeal, National presents the same two issues on which its motion for new trial or JNOV was based. It argues that the trial court erred in its instruction to the jury that the policy was subject to cancellation or rescission only if Mrs. Dutton intentionally or deliberately furnished false information in her application for insurance.
The trial court addressed the issue of National's right to cancel the policy several times in its instruction to the jury, and the following is representative of the substance of the trial court's charge:
"The question in the first instance that the Jury has got to answer is, whether or not the Plaintiff, Mrs. Dutton, was truthful in her answer. She might have had a heart condition; if she knew about it and if she failed to answer, then the insurance company is entitled to have the contract rescinded, but the fact that it turns out later on that she has a heart condition or she has some heart condition, that is not the question; the question is, was at the time and place that she filled out this application did she truthfully answer to the best of her knowledge all the questions as specified in that application. And once you have found that she did, then we must move on to other areas."
We agree that the trial court's instruction was erroneous. A representation need not be made with intent to deceive for an insurer to void an insurance policy. In pertinent part, Code 1975, § 27-14-7, provides:
"(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, *1361 omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
"(1) Fraudulent;
"(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
"(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."
Construing the predecessor to § 27-14-7, this Court in New York Life Ins. Co. v. Horton, 235 Ala. 626 at 630, 180 So. 277 at 280-1 (1938), commented:
"It will be noticed, as often heretofore pointed out in our decisions, that the statute is in the alternative, `unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss.' If the misrepresentation falls within the second alternative, then it is not necessary that it be `made with actual intent to deceive.' In fact, under the second alternative, the party making the representation may be wholly unaware that he is misrepresenting the true facts, and may be wholly innocent of any bad motive. In such case, intent or motive is not a material inquiry." (Citations omitted.)
It was unnecessary, therefore, for plaintiff to have provided incorrect information with an intent to deceive. If she innocently made an incorrect statement that was material to acceptance of the risk, or would have caused National, in good faith, not to have issued the policy as it did, then National could have denied her claim and voided her policy. Accordingly, National's objections to the erroneous charges and motion for a new trial were meritorious.
National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179 (Ala.1982), is our most recent effort to define the recently recognized tort of bad faith refusal to pay a valid insurance claim. There we said:
"An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. Chavers v. National Security Fire Ins. Co., Ala., 405 So.2d 1 (1981). No lawful basis `means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, Ala. 405 So.2d 916 (1981). When a claim is `fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid.

"Under those authorities the plaintiff in a `bad faith refusal' case has the burden of proving:
"(a) an insurance contract between the parties and a breach thereof by the defendant;
"(b) an intentional refusal to pay the insured's claim;
"(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
"(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
"(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
"In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
"The `debatable reason' under (c) above means an arguable reason, one that is open to dispute or question."
Applying these rules to the facts of this case, we are compelled to hold that the trial *1362 court erred in denying National's motion for judgment notwithstanding the verdict on the bad faith claim.
The plaintiff failed to meet the burden of proof that she must bear. She did not prove that her claim was denied by National without a reasonably legitimate or arguable reason for the refusal. In fact, her evidence established that it did have a reasonable basis for denying the claim.
Whether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision is made. Here, the company had before it a hospital record which purported to quote Mrs. Dutton as saying, upon her admission, that she was suffering chest pain and had experienced chest pain for two or three years. This was in direct contrast to the answer which she gave to a direct question on the application. When the company informed her that it was denying the claim and cancelling the policy because her answers to the questions on the application conflicted with the medical records, she did not come forward with any additional information with regard to a history of chest pain. She did not tell the company that the hospital admission record was false; in fact, she did not attempt to refute it in any way except to have her physician write a letter in which he did not dispute the record. He simply said that, insofar as he knew, she had no history of hypertension before he first saw her and hospitalized her.
Under these facts, a reasonable basis existed for denying the claim and would, thus, defeat a tort action for bad faith refusal to pay the claim. We cannot agree with the plaintiff's assertion in brief that the company had an affirmative duty to investigate further. It invited Mrs. Dutton to supply additional information if what it had was inaccurate. This she did not do.
As noted by both sides in this case, the tort of bad faith refusal to pay a valid insurance claim is in the embryonic stage, and the Court has not had occasion to address every issue that might arise in these cases. In Bowen, supra, we set out the elements of the tort and attempted to show the plaintiff's burden in these cases. It is a heavy burden. In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.
Such is the case before us. Under these facts, National sought and was entitled to a directed verdict on the tort claim. Therefore, the trial court erred in denying its motion for a judgment notwithstanding the verdict on that claim.
The judgment appealed from is reversed and the cause remanded for a new trial on the contract claim.
REVERSED AND REMANDED.
MADDOX, BEATTY[**], and ADAMS, JJ., concur.
JONES[**] and EMBRY, JJ., concur specially.
FAULKNER, J., dissents.
TORBERT, C. J., recused.
JONES, Justice (concurring specially).
I concur completely with the opinion and write separately to elaborate on one point. The opinion correctly prefaces the "directed verdict on the contract claim" standard with the words "In the normal case"; and the phrase "if the evidence produced ... creates a fact issue ..." is preceded by the word "Ordinarily." These are significant *1363 qualifications. Certainly, extreme cases will arise in which a fact issue will present a jury question on that claim. This is not the case before us; and, absent such circumstances, the "directed verdict on the contract claim" is the applicable standard for testing the tort of bad faith claim.
EMBRY, Justice (concurring specially):
I am in complete agreement with the result the opinion of the majority dictates. However, it seems to me the course of this case through the trial court demonstrates the need for the safeguards suggested in my dissent in Vincent v. Blue Cross-Blue Shield of Alabama, Inc., 373 So.2d 1054, 1067, 1068 (Ala.1979). My views, regarding the safeguards necessitated by the nature of these cases, were repeated in my dissent in Chavers v. National Security Fire & Casualty Co., 405 So.2d 1, 16, 17 (Ala.1981), and in my special concurrence in Aspinwall v. Gowens, on rehearing, 405 So.2d 135, 139.
NOTES
[*] Although not sitting at oral argument of this case, this Justice has listened to the tapes of oral argument and has studied the briefs.
[**] Although not sitting at oral argument of this case, this Justice has listened to the tapes of oral argument and has studied the briefs.