I concur with the opinion of the Court on each of the issues addressed. Because of its posture and factual context, this case furnishes an excellent vehicle for the evolutionary development of the law of bad faith in this State, and I write specially in order to extend the discussion in two areas: 1) the relationship of declaratory judgment actions to the "directed verdict on the contract claim" test for bad faith; and 2) certain consequences of a declaratory judgment action upon compulsory counterclaims for bad faith.
In support of its contention that the declaratory court's finding of the existence of a "justiciable controversy" as a matter of law bars this bad faith action, Safeco cites the following language in Chavers v. National Security Fire Casualty Co., 405 So.2d 1, 10 (Ala. 1981):
 "Alternatively, the insurer may file a declaratory judgment action; and if the pleadings and proof justify an adjudication of the existence of a justiciable controversy as to the legal basis for refusal of payment issue — allowing the court to entertain that action whether or not the insurer prevails on the insurance contract claim — such an adjudication would also establish a valid reason for its refusal to pay, thus avoiding liability on the bad faith tort claim." 405 So.2d 10.
On the other hand, the Simses contend that the quoted language of the majority in Chavers is dicta. They submit: "(1) Such dicta indicates a misunderstanding of the term `justiciable controversy' as it is used in *Page 1224 
declaratory judgment actions and (2) Such dicta should not be invoked to protect an insurance company whose bad faith produced the sham, i.e., the very declaratory judgment action where the justiciable controversy was found."
To support their first argument, the Simses quote the following language in Brown Root, Inc. v. Big Rock Corp., 383 F.2d 662
(5th Cir. 1967):
 "Where the Declaratory Judgments Act is invoked the same jurisdictional requirements as to a case or controversy must be met as in other suits. . . . A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop. Pertinent here is this statement of the Supreme Court:
"`. . . .
 "`A "controversy" in this sense must be one that is appropriate for judicial determination.
 "`* * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations or parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621. See Wacker v. Bisson, 5th Cir. 1965, 348 F.2d 602.'" 383 F.2d at 665-666.
The standard for testing a bad faith claim is to be found neither in the adjudication of a justiciable controversy, standing alone, nor in the judgment on the merits of the contract claim. This is not to say, of course, that either of these holdings is irrelevant to the bad faith issue. To be sure, the filing of a declaratory judgment action, under appropriate circumstances, may evidence a good faith attempt to seek a prompt resolution of a disputed claim. If, on the other hand, the refusal to pay is without legal excuse, the mere filing of a declaratory judgment action, followed by a finding of justiciable controversy, may enhance rather than diminish the degree of bad faith.
It must be said, also, that not only is a judgment on the merits relevant, but, in any claim seeking adjudication of the dispute, a resolution of the contract claim favorably to the insured is a requisite element of the tort of bad faith remedy.
The latest expression of this legal standard for testing a bad faith claim is found in National Sav. Life Ins. Co. v. Dutton,419 So.2d 1357 (Ala. 1982). After quoting at length from NationalSecurity Fire Casualty Co. v. Bowen, 417 So.2d 179 (Ala. 1982) (defining the "absence of a debatable reason to deny payment" rule, and detailing the plaintiff's burden of proof), Dutton
formulates the following test:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury." 419 So.2d 1362.
This "directed verdict on the contract claim" test is not to be read as requiring, in every case and under all circumstances, that the tort claim be barred unless the trial court has literally granted plaintiff's motion for a directed verdict on the contract. Indeed, the words "entitled to a directed verdict" so indicate. Rather, this test is intended as an objective standard by which to measure plaintiff's compliance with his burden of proving that defendant's denial of *Page 1225 
payment was without any reasonable basis either in fact or law;i.e., that defendant's defense to the contract claim is devoid of any triable issue of fact or reasonably arguable question of law.
Exceptions to the "directed verdict" rule will undoubtedly arise. Take the case where the insurer insists that its refusal of payment was grounded solely on a particular entry in a hospital record, and plaintiff denies the very existence of such an entry. Merely because the insurer may be able to withstand a directed verdict motion — the existence vel non of the record entry itself being an issue of fact — would not, as a matter of law, bar the plaintiff's tort claim. This extreme example is to be distinguished from the more normal situation in which the factual dispute centers around the reasonable, but conflicting, inferences that may be drawn from a hospital record entry. If the entry in fact exists and one of the reasonable inferences of fact which may be drawn therefrom supports a legal basis for denial of the claim, Plaintiff would not be entitled to a directed verdict on the contract claim; thus, the claimant would be barred from proceeding with his tort of bad faith claim, even though the issue of fact may be resolved adversely to the insurer and the contract benefits awarded to the insured.
Because of its potential relevance, one additional exception to the "directed verdict" test is suggested: Take the case of the insurer whose refusal of payment is based solely upon a legal position with respect to the controlling principles of law and its application to the undisputed facts giving rise to the claim. While the insurer, under the guise of asserting a legitimate defense, could not be heard to take issue with clear, well settled, elementary principles of contract law, certainly the rule of reasonableness dictates a field of operation for a denial of benefits based upon arguable legal grounds which are fairly debatable, even though the trial judge may correctly reject such arguments and direct a verdict for the insured.
Thus, as we have seen, Dutton's use of the terms "In the normal case" and "Ordinarily" allows for exceptions to the "entitled to a directed verdict" test. In the first example, the insured may proceed with his bad faith claim even though he was not entitled to a directed verdict; and in the second example, the insurer would be entitled to a judgment on the tort claim even though the insured was entitled to a directed verdict on the contract claim. Certainly these rare exceptions will not be difficult to recognize, nor will the general rule, because of rare exceptions, be difficult to apply.
It may be helpful, for purposes of future cases, to apply theDutton test to the case at hand. We can readily conclude that, in the declaratory judgment action, the insureds were entitled to a directed verdict on their contract claim. A detailed discussion of the controlling legal principles and their application to the undisputed facts are unnecessary. Suffice it to say, the insurer offered no evidence whatsoever to raise a factual issue as to any lawful reason for declining coverage under the policy of insurance. Not only did its employees, who handled or had any contact with the transaction in question, not testify at trial, but, as was disclosed in the trial of the instant case, none of them were even aware of the filing or pendency of the declaratory judgment action. Indeed, the bill seeking a declaration of noncoverage omitted each and every averment of fact, which, when supplied by undisputed evidence during trial, constituted the irrefutable legal conclusion of waiver as found by the trial judge.
We have observed earlier that the insurer's refusal to pay may be legitimately defended on any fairly debatable issue of law as well as fact; and this justifiable excuse for nonpayment obtains irrespective of its subsequent rejection by the court, the test being one of reasonableness.
Even under the most liberal application of the "reasonableness" standard, however, the insurance nonwaiver argument cannot be classified as fairly debatable. The law of waiver, as applied to the undisputed position of no coverage, is demonstrated by the *Page 1226 
case of Washington National Insurance Co. v. Scott, 231 Ala. 131,164 So. 303 (1935):
 "Probably there is no principle of insurance law more firmly settled, nor better grounded in justice and reason, that that an insurer, who receives and retains premiums, the very consideration for carrying the insurance risk, with knowledge of facts which, under stipulations for his benefit, would, in the absence of such knowledge, empower him to treat the policy as having never been in force, or as being no longer in force, will be held to have waived such stipulations. Waiver, strictly speaking, is a matter of intent. But, in such case, no proof of actual intent is required. Any other intent, in such case, would work a positive wrong or fraud on the insured. The law charges the insurer with the intent to waive under the doctrine of estoppel." 231 Ala. at 132, 164 So. 303.
It is undisputed that Safeco (1) received the premium; (2) knew of the loss; (3) knew the money was for a specific policy and was specifically designated to cover a particular "premium due" for a specified coverage; and (4) kept the premium and allocated it to a coverage other than designated by the insured without informing the insureds, and without giving them the option of accepting different coverage or requesting return of their money. To be sure, Safeco's own expert legal witness testified that the undisputed facts gave rise to a waiver of Safeco and coverage to the insureds under settled law, thus not justifying a declaratory judgment action.
It should be emphasized that a finding of bad faith based upon rejection of an insurer's legal argument should be reserved for extreme cases. The right of an insurer to deny a claim on any arguable legal issue is to be as zealously guarded as is its right to decline benefits on any debatable issue of fact, the test of reasonableness being the same. To be sure, reasonably arguable legal issues may well include a legitimate challenge to existing precedent (assuming, of course, that such challenge is promptly pursued, for example, in a declaratory judgment suit).
Notwithstanding the liberality of this test, the facts of the instant case fall outside the permissible extremes of any reasonably arguable legal issue. And this determination is made not on the initial denial of coverage by some lay employee in the claims department upon receipt of the late premium, but upon subsequent conduct of supervisory and policymaking employees whose actions effected the waiver and directed the litigation without any semblance of defense as to any viable issue of fact or law.
I agree that an accrued cause of action for bad faith failure to settle an insurance claim is a compulsory counterclaim in a declaratory judgment action filed by the insurer. Not only are the two claims related — the requisite of Rule 13 — they find their genesis, and essential premise, in the same act — differing only in the degree of culpability.
Although the opinion of the Court has not specifically treated the statute of limitations issue in the instant case, having reversed on other grounds, the interplay between the period of limitations for bad faith claims and the compulsory counterclaim requisite of Rule 13 (a) is worthy of comment: Once the insurer filed a declaratory judgment action, given the accrual of an alleged tort of bad faith claim, the statute of limitations issue is rendered moot; and this for the reason that a fraud claim arising out of the same transaction is clearly in the nature of recoupment and not subject to a statute of limitations defense.Campbell v. Regal Typewriter Company, Inc., 341 So.2d 120 (Ala. 1976). *Page 1227