ROBERTSON, Justice,
specially concurring:
The majority opinion states a three step procedure to be followed by trial judges in handling bad faith tort and punitive damage claims. Majority opinion, pages 809-810. With sincerest respect for my colleagues, I suggest that this portion of the majority opinion contains two fundamental deficiencies. First, the language employed *815 fails to convey with reasonable precision the process to be followed. Second, and by far more important, the procedure announced (if I understand it) makes bad law.
I join nevertheless in today’s decision affirming as it does the punitive damages judgment entered in the court below. I have reached this conclusion by a route different from that adopted by the majority. Because our methodological differences are of some moment and ought be made clear, I file this opinion.
I.
Beginning with Standard Life Insurance Company of Indiana v. Veal, 354 So.2d 239, 248 (Miss.1977), we have been struggling to decide and articulate when in cases such as this the plaintiff insured becomes entitled to have the jury consider his punitive damages claim. We have created a linguistic bog. Being ex-lawyers we routinely eschew use of one word when two or three will do just as well.
From Veal through the case at bar, we have bandied about “legitimate reason”, “arguable reason” and now “reasonable reason”. Professing skills in precision use of language, we have become masters of obfuscation. With respect, the majority reaches new heights — and in the most important section of its opinion — that outling the principles to be employed in determining whether the bad faith tort and punitive damages claim should be submitted to the jury, at pp. 809-810.
In the first place, “legitimate” and “arguable” and “reasonable” are surely synonyms, at least in this context. The majority states that, to avoid a jury determination of punitive damages, the insurer must have “had a legitimate or arguable reason to deny payment of the claim”. Majority opinion, p. 809. The opinion then states, “Of course, such a reason should be a reasonable one.” There is I insist no such thing as a “legitimate reason” which is not by definition a “reasonable reason”. The same of “arguable reasons”. Clarity demands that we jettison two of these snyo-nyms. I would salvage “arguable”.
More important is the idea our words ought to convey. Our opinions from Veal to the present mask what is involved in ascertaining whether an insurer has an arguable reason to deny payment of a claim. In the present context, we must (if logic and fairness retain roles in our law) mean: If the insurer has at trial asserted a defense to the claim — lack of coverage, an affirmative defense, or whatever, and if the state of the evidence after all parties have rested is such that under our familiar rules regarding when it is proper that a factual issue be taken from the jury, see, e.g., Paymaster Oil Co. v. Mitchell, 319 So.2d 652, 657 (Miss.1975), the plaintiff insured is not entitled to a peremptory instruction on the underlying policy claim, at that point as a matter of law the insurance company becomes insulated from an award of punitive damages.
II.
When the test just stated is applied to the ease at bar, the bad faith tort claim was properly submitted to the jury. There is no jury issue on the basic question of Reserve’s liability under the McGee policy. McGee was entitled to a peremptory instruction on that claim. He was, therefore, entitled at the very least to have his bad faith tort claim submitted to the jury.
Reserve has charged that McGee made a false statement on his application and that this gave Reserve the right to cancel the policy. We are told that there is a jury issue here. See Majority opinion, pp. 809, 812.[1] In my view there was no issue of “false statement” — without a false statement issue, there can be no issue as to *816 whether Reserve had an arguable reason to cancel the policy.
As I understand the facts, Reserve’s position at trial ultimately boiled down to its claim that, prior to the issuance of the policy, McGee had been treated for “transient ischemia attack” and that he had not disclosed this at the time of the application. This is utter nonsense.
At the time of the application, McGee disclosed the name of a Dr. Bobo of Pearl, Mississippi. He also executed the proper form authorizing Dr. Bobo to release to Reserve any information requested by Reserve. I would hold that, as a matter of law, where an insured does this in his application for insurance, the insurance company is charged with knowledge of all information in the doctor’s records and everything the doctor may personally have remembered about the applicant.
In this case, once Reserve got around to checking with Dr. Bobo, it discovered that Dr. Bobo had seen and treated McGee some 11 times between February 13, 1976, and February 18, 1980, the day of the policy application. Specifically Dr. Bobo’s records reflect treatment for TIA [transient ischemia attack] on June 16,1978, and June 2, 1979. I would hold that, at the time it accepted the risk and issued the policy in question, Reserve is deemed to have known what its later investigation via Dr. Bobo revealed.
It seems to me that insurance companies ought to be happy with this approach. By checking with prior treating physicians, they can obtain accurate medical history of an insurance applicant. Few laymen are able to describe fully their medical history. This is particularly so in the case of one like Mr. McGee who has only a third grade education. McGee’s disclosure of his prior relationship with Dr. Bobo gave Reserve access to better information than it would have had if McGee had stumbled through his personal recollections of his medical history.
In this context, I would hold that Reserve’s affirmative defense of material false statement was inadequate as a matter of law. Had McGee moved that it be stricken at the end of the proof, that motion should have been granted. Beyond that, all agree that the current claim for treatment related to McGee’s urinary tract is within the coverage of the policy. There being no policy defense as a matter of law, I would hold that McGee was entitled to a directed verdict that Reserve is liable to him on the underlying policy claim. In this respect, I disagree with the majority claim insofar as it holds that there was a jury issue on the question of liability under the policy.
III.
I conclude that (a) there was no jury issue on the question of Reserve’s liability under the policy in question and (b) that McGee was entitled to judgment as a matter of law. For this reason I join in affirmance. If I saw the matter as does the majority, that there was a jury issue made out on the policy liability question, it would then in my mind follow as a matter of logic and law that the punitive damages issue should never have been submitted to the jury. I have briefly stated in Section I my view of how these eases should be handled. In the context of the case of bar, I present a more complete explanation.
In the present context, there is only one way there can be a relevant jury question on the matter of liability on the underlying policy claim. Having in mind the applicable rules of law — the privately made law contained in the insurance contract and the positive law found in the statutes and cases, there must have been some credible evidence presented to the jury which, if believed, would lead it to return a verdict for the insurance company.
If the evidence is such that a reasonable jury could find facts which would under-gird a successful policy defense, the same evidence surely would justify a reasonable insurance company in so concluding. Standard Life Insurance Company of Indiana v. Veal, 354 So.2d 239 (Miss.1977), holds that:
*817 If an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie, _ 354 So.2d at 248.
An arguable reason is one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts. And when we say this we are in essence articulating in an extrajudicial context our familiar rules regarding what proof is necessary to create a jury question. See, e.g., Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss.1975); City of Jackson v. Locklar, 431 So.2d 475, 478-479 (Miss.1983).
Alabama subscribes to the rule I urge we adopt. In National Savings Life Insurance Co. v. Dutton, 419 So.2d 1357 (Ala.1982), the Supreme Court of Alabama held:
In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury. 419 So.2d at 1362.
See also, Freeland, et fil., Bad Faith Litigation: A Practical Analysis, 53 Miss.L.J. 237, 245-247 (1983).
If there is a jury issue on the underlying policy question, that is, if the plaintiff insured is not entitled to a peremptory instruction on his policy claim, then it follows a fortiori that the insurance company has an arguable reason for failing to pay the claim. In this world we live in, the reasonableness of jurors is not in fact different from the reasonableness of insurance claims adjustors. They are all people. The law ought not define differences in people that do not correspond to differences in fact.
The majority at page 809 states:
We state here that there was a clear question for the jury to determine whether or not Appellee made false statements on his application that would permit Appellant to cancel the policy months later, after claim made, under Section 83-9-11(3). A failure to have submitted this ' question to the jury clearly would have been error by the trial court.
If this is so, it follows as the night the day that the submission to the jury of the punitive damages issue was clear error by the trial court.
Near the end of the opinion the Court repeats the point stating:
In summary we find that the evidence in the record before us clearly presents a question for the jury as to whether or not McGee made a material, false statement in his application which gave Appellants sufficient reasons to take the action set out in its affirmative defense. Also, a jury question was made as to whether or not the evidence under the affirmative defense was sufficient to furnish Appellant with a legitimate or arguable ground to cancel the policy ab initio.
Again, if this be so, it follows as the seasons that Reserve was entitled to a peremptory instruction in its favor on the punitive damages issue.
Only because my reading of the record convinces me, for the reasons set out in Section II above, that McGee was entitled to a peremptory instruction on his claim on the policy do I join in holding that the issue of punitive damages was properly one for the jury.
IV.
It would be neat and tidy if we could simply hold that, at the conclusion of all of the evidence in a bad faith case, the trial judge should consider the question of whether a jury question is presented on an underlying policy defense, and that, if he holds that a jury issue has been made out, he should then direct a verdict in favor of *818 the insurance company on the punitive damages question. Such a procedure would have logical symmetry, but little else to recommend it. The real world is seldom neat and tidy.
This Court has repeatedly urged trial judges, faced with a motion for a directed verdict or a peremptory instruction, in doubtful cases, to go ahead and submit all issues to the jury, reserving the prerogative of “correcting” any jury verdict later on a motion for judgment notwithstanding the verdict. See, e.g., Astleford v. Milner Enterprises, Inc., 233 So.2d 524, 526 (Miss.1970); Claiborne v. Greer, 354 So.2d 1109, 1111 (Miss.1978). This, we say, saves needless retrials if on appeal we disagree with the trial judge and hold that a jury issue was made out.
In our trial courts there are many close cases. It requires no great insight — only candor — to note that frequently reasonable minds may differ whether a jury issue has been created. See, e.g., Pharr v. Anderson, 436 So.2d 1357, 1361-1366 (Miss.1983). Jury questions, like beauty, are often in the eye of the beholder. There are many cases where the plaintiff is within an inch or two of losing his case via a peremptory instruction. If only our eyesight were good enough to determine with accuracy which side of the line his proof is really on.
Because such matters are gray and are often difficult to determine even with the benefit of the cool reflection on the record we are able to bring to bear, we urge our trial judges to submit such cases to the jury. This should be done in claims on insurance policies. On the underlying claim, it happens not infrequently that the evidence is close as to whether the plaintiff insured is entitled to a peremptory instruction as a matter of law.
In all bad faith tort cases against insurance companies, where in the opinion of the trial judge there is sufficient evidence to submit to the jury the issue of punitive damages, special verdicts under Rule 49(b), Miss.R.Civ.P., should be used. This should be done even where the trial judge is in doubt whether the plaintiff insured is entitled to a peremptory instruction on his policy claim. The appropriate fact questions on the underlying policy and the insurance company’s affirmative defenses should be submitted as separate questions. Then, the appropriate questions on the bad faith tort and punitive damages issue should be submitted, if warranted by the proof.
Once the jury’s special verdict is received, both the trial court and, in the event of an appeal, this Court, are in a position to render final judgment. Specifically, if on post-verdict motion and upon reflection the trial judge is of the opinion that he properly submitted to the jury the plaintiff’s underlying policy claim, that is, that plaintiff was not entitled to a peremptory instruction on that claim, a punitive damages judgment is precluded as a matter of law. A holding by the trial judge that plaintiff was not entitled to a peremptory instruction is tantamount to a holding that the insurance company had “an arguable reason for failing to pay a claim” within the meaning and contemplation of the now famous dicta from Standard Life Insurance Company of Indiana v. Veal.
Where the Rule 49(b) procedure is employed, we are on appeal in a position to dispose of the case finally. Where we find plaintiff was not entitled to a peremptory instruction on the underlying policy claim, reversal of any punitive damages judgment inexorably follows.
V.
For the reasons described in the majority opinion, the evidence in this case was such that, under our heretofore existing rules of law, the punitive damages issue should be submitted to the jury. I have reviewed the jury instructions describing the circumstances in which the jury should consider an award of punitive damages and find them sufficient. As is pointed out in the majority opinion, we have before us no assignment of error challenging the amount of the jury’s punitive damage award.
*819 For these reasons the judgment of the Circuit Court should be affirmed.
PRATHER, J., joins this opinion.
WALKER, P.J., joins Parts I and IV only.

. A point needs to be made clear. If the majority is suggesting that there was a jury issue presented on Reserve’s material false statement defense so that McGee was not entitled to a peremptory instruction, the majority is wrong. If the majority is suggesting that there was a jury issue in the sense that Reserve was not entitled to a peremptory instruction, the point is merely irrelevant.