454 So.2d 942 (1984)
NATIONAL SECURITY FIRE & CASUALTY COMPANY and William Feazell
v.
James VINTSON, Emma Vintson, and Cavalier Insurance Company.
82-586.
Supreme Court of Alabama.
July 6, 1984.
Martha Williams of Williams & Williams, Cullman and Gary W. Lackey, Scottsboro, for appellants.
Ronald L. Allen and Jake B. Mathews, Jr. of Merrill, Merrill, Mathews & Allen, Anniston, Betty C. Love, Talladega, Henry Agee and M. Douglas Ghee, James S. Hubbard, Anniston, for appellee Emma Vintson.
Robert Dillon of Merrill, Porch, Doster & Dillon, Anniston, for appellee Cavalier Ins. Co.
BEATTY, Justice.
Appeal by defendants, National Security Fire & Casualty Company (National Security) and William Feazell, from an adverse judgment entered on a jury verdict. The action involved coverage under a fire insurance policy and was brought by plaintiffs, James Vintson, Emma Vintson, and Cavalier Insurance Company (Cavalier). We reverse and remand.
*943 Plaintiff James Vintson originally filed suit in the Circuit Court of Calhoun County on July 17, 1980. Vintson's complaint, as finally amended, contained three counts: (1) breach of an oral contract for fire insurance; (2) fraud and misrepresentation; and (3) bad faith refusal to pay a direct claim. The case was tried to a jury, and judgment was entered on a jury verdict of $35,000 in favor of Vintson. On appeal, that judgment was reversed and the case remanded for a new trial. National Security Fire & Casualty Co. v. Vintson, 414 So.2d 49 (Ala.1982).
Upon remand, plaintiff's ex-wife, Emma Vintson, and Cavalier were added as parties plaintiff. Cavalier had coverage on the insured risk, which was still in effect at the time of the fire in this case, and would be entitled to a pro rata refund in the event of recovery from National Security.
The facts shown on the second trial are basically the same as those shown on the first trial, as set out by Justice Shores, speaking for the Court in Vintson, supra. On June 10, 1980, Feazell, a debit agent of National Security, visited James Vintson and discussed the purchase of a burial policy. Feazell returned to the Vintson residence on June 18, 1980, at which time he sold Vintson a policy of fire insurance on his mobile home. The application for the insurance was filled out by Feazell. James Vintson signed the application, paid the initial premium, and received a receipt. After completing the application, Feazell forwarded it to National Security to be processed. The mobile home, which was the subject of the application, burned on June 22, 1980.
James Vintson contacted National Security's Anniston office manager, Mary Morton, on June 23, 1980, and advised her of the loss of his mobile home. He was told that National Security probably would not provide coverage, because no policy had been issued. Vintson subsequently received a letter from National Security dated June 24, 1980, denying liability and refunding his premium. The reason given for the denial was that no policy had been issued and that the application for insurance clearly stated that the policy was to be effective as of the date of delivery.
Beginning September 20, 1982, the case was tried a second time before a jury. At the close of the plaintiffs' presentation of evidence, the trial court took under advisement, and subsequently denied, defendants' motion for directed verdict, which complied with the requirements of Aspinwall v. Gowens, 405 So.2d 134 (Ala.1983), infra, as to each count of the complaint. All counts were submitted to the jury, and the jury returned a general verdict in favor of plaintiffs. Judgment was entered on the verdict in the amount of $150,000.00. The defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial or a remittitur. The motion was denied January 17, 1983.
The defendants, National Security and Feazell, raise the following issues on appeal:
(1) Whether the trial court erred in denying defendants' motion for directed verdict as to Count II (fraud) and Count III (bad faith);
(2) Whether the general verdict based on self-contradictory theories of recovery is inconsistent as a matter of law;
(3) Whether there was evidence to support an award of punitive damages; and
(4) Whether defendants should have been granted a new trial based on improper closing arguments and a violation of a ruling on defendant's motion in limine by plaintiffs' counsel.
We first address the defendants' claim that the trial court erred in denying their motion for directed verdict with regard to Counts II (fraud) and III (bad faith refusal to pay).
A directed verdict is proper only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact on which reasonable people could differ. Ritch v. Waldrop, 428 So.2d 1 (Ala.1982). When a motion for directed verdict is requested, the *944 entire evidence must be viewed in a light most favorable to the opposing party. Ott v. Fox, 362 So.2d 836 (Ala.1978).
Before we consider whether the denial of the directed verdict was proper under the specific facts of the present case, we look first at the evolution of the tort of bad faith refusal to pay a direct insurance claim in this state. This Court stated in Chavers v. National Security Fire & Casualty Co., 405 So.2d 1, 7 (Ala.1981):
"[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either `(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.'" (Emphasis added.)
Later, in National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982), we held:
"No lawful basis `means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, Ala., 405 So.2d 916 (1981). When a claim is `fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid.

"Under those authorities the plaintiff in a `bad faith refusal' case has the burden of proving:
"(a) an insurance contract between the parties and a breach thereof by the defendant;
"(b) an intentional refusal to pay the insured's claim;
"(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
"(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
"(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
"In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim. [Emphasis in original.]
"The `debatable reason' under (c) above means an arguable reason, one that is open to dispute or question. Webster's Third New International Dictionary (1931) at 116. See Chavers at 10; see also Embry, J., concurring on rehearing in Aspinwall v. Gowens, Ala., 405 So.2d 134 (1981)."
More recently in National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357 (Ala. 1982), this Court emphasized the heavy burden that a plaintiff must bear in a bad faith case. Dutton, supra, held:
"In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury." 419 So.2d at 1362.
Dutton also stated that "[w]hether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision is made."
Having set out the rules as they have progressed, we now apply these rules to the present case.
The following, as stated by this Court on the first appeal by National Security, clearly remains applicable in reviewing this case a second time:
"This case turns on whether or not the jury believes that Feazell, as agent for NSFC [National Security], represented to Vintson that he was covered from the *945 time of the payment of the premium and whether Vintson relied on such representations. If the jury believes those facts, then NSFC is estopped to deny that Vintson was covered under the policy. Feazell could also be guilty of misrepresentation. If the jury so finds, it could return a verdict based either on the contract or on the tort. If the jury does not believe that Feazell made the representations, then that precludes a finding of either a breach of contract or fraud." 414 So.2d at 51-52.
There was conflicting testimony concerning the conversation between Vintson and Feazell regarding the time that the policy would take effect. When the case was before us on the first appeal, we held
"that in the narrow situation, such as the one in this case, where the plaintiff claims misrepresentation in the inception of the contract, i.e., where the agent misrepresents the moment in time that the policy will take effect, the plaintiff has the right to present his case to the jury under either a breach of contract theory or the tort of misrepresentation or both, because the same facts could support a finding that the contract did exist, even though the agent misrepresented the time of its inception."
The circumstances have not changed with regard to this appeal other than the fact that at the second trial a claim for bad faith refusal to pay was submitted to the jury along with the contract and fraud claims.
It is clear from our holding following the first appeal of this case that plaintiffs would not be entitled to a directed verdict on the contract claim as a matter of law. Because we recognized that a jury question was presented regarding the claimed misrepresentations by the agent Feazell, a debatable reason existed for denying liability. The burden in this case was on the plaintiffs to show that National Security had no legal or factual defense to the insurance claim.
At the time National Security denied Vintson's claim, it had before it the standard application for insurance, and evidence was presented at trial that until an application for insurance was favorably passed on by the company, and the policy was issued, and delivery was made to the insured, no policy of insurance was binding. This in itself satisfied the requirement of a debatable reason and was sufficient to prevent the submission of the bad faith issue to the jury. Further, because we find a jury question was presented on the contract claim, the trial court erred in allowing the bad faith count to reach the jury.
Vintson contends that National Security made no investigation of either the sale of the policy or the fire before denying liability on his claim. He argues that as a result a question of bad faith existed. We held in Dutton, however, and we find under the facts in this case, that the insurer had no affirmative duty to investigate further. National Security had a reasonable debatable basis, under the terms of the policy, for denying the claim; thus a tort action for bad faith refusal to pay was precluded. We conclude that the trial court erred when it refused to grant defendants' directed verdict on the bad faith count.
We hold that the trial court was correct in denying defendants' motion for directed verdict regarding the fraud count. As stated in our prior opinion in this case, and as discussed above, the evidence supported plaintiffs' claim of Feazell's misrepresentations to Vintson. Feazell testified that he was trying to sell a policy when he made the representations and that he was aware of company policies as to the time a policy was effective. All the evidence presented a question of fact for the jury, and a directed verdict would have been improper under the circumstances.
We conclude that the trial court was correct in allowing the jury to consider the evidence as it related to the claims of breach of contract and fraud. It erred, however, in denying National Security's *946 motion for directed verdict on the bad faith count. Because a general verdict was returned by the jury, this case must be reversed and remanded for a new trial. The recent case of John Deere Industrial Equipment Co. v. Keller, 431 So.2d 1155, 1157 (Ala.1983), states the rule with regard to the general verdict as follows:
"In Aspinwall v. Gowens, 405 So.2d 134, 138 (Ala.1981), the Court held:
"`[I]f a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count.'
"It follows from this holding that, if the defendant files a motion for directed verdict as to a count which is not supported by the evidence and the court denies such motion, a general jury verdict will not be presumed to have been returned on a count which is supported by the evidence .... We cannot presume that the general jury verdict relates to one of the counts which the evidence did support, where it is equally possible that it is based on the count which is unsupported by the evidence. Coffee County Bank v. Hughes, 423 So.2d 831 (Ala.1982). See, also, Estes v. Nix, 401 So.2d 62 (Ala.Civ.App.1981), writ denied, 401 So.2d 64 (Ala. 1981)...."
For this reason, the judgment is hereby reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Justices concur, except FAULKNER, J., who concurs in the result.