Elmer TAYLOR, as Executor of the Estate of Bonnie P. Taylor,
Plaintiff-Appellant, Cross-Appellee,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA,
Defendant-Appellee, Cross-Appellant.

No. 84–7562.

United States Court of Appeals,
Eleventh Circuit.

Nov. 12, 1985.

Rehearing and Rehearing En Banc Denied
Dec. 24, 1985.

Herman Cobb, Buntin & Cobb, D. Taylor Flowers, Dothan, Ala., for plaintiff-appellant, cross-appellee.

Ollie Blan, Spain, Gillon, Riley, Tate & Etheredge, Birmingham, Ala., for defendant-appellee, cross-appellant.

Before HENDERSON and CLARK, Circuit Judges, and HOFFMAN *, District Judge.

WALTER E. HOFFMAN, District Judge:

As executor of the Estate of Bonnie P. Taylor, Appellant, Elmer Taylor, filed a complaint against Appellee, The Prudential Insurance Company of America (Prudential), on September 7, 1983. The complaint

---

* Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation.

alleged breach of contract and bad faith refusal to pay benefits under three policies of insurance owned by Bonnie P. Taylor. The district court granted Prudential's motion for summary judgment on the bad faith count and denied the motion on the contract counts. The jury returned a verdict in favor of Taylor, awarding $6,378.05 on one policy and $5,121.95 on a second policy. Taylor had previously amended his complaint to drop a count involving a Medicare supplement policy.

Taylor appeals the decision granting summary judgment to Prudential on the bad faith count. Prudential presents a cross-appeal on the contract judgment favoring Taylor. We reverse the summary judgment on the bad faith count, holding that genuine issues of material fact have not been resolved, pursuant to Fed.R.Civ.P. 56. We affirm the judgment regarding the contract claims.

## FACTS

On May 30, 1982, Bonnie P. Taylor, aged 86, was hospitalized as the result of a stroke. Except for six days at home, she remained in the Elba (Alabama) General Hospital until her death on January 21, 1983. Throughout her hospitalization, Mrs. Taylor retained in full force and effect three insurance policies with Prudential. The policy designated OU offered certain benefits beginning with the first day of the insured's hospitalization. The policy designated OB described benefits payable on the eighth day and continuing for each subsequent day in the hospital. Neither of these policies was dependent upon receipt of Medicare benefits. A third policy, M4, was a Medicare supplement policy but is not the subject of this appeal.

Prudential paid no daily benefits to Bonnie Taylor under the OU or OB policies for the periods beginning September 23, 1982, through December 11, 1982, and December 24, 1982, to January 12, 1983. These are the time periods at issue in the present case. During this time, Mrs. Taylor remained hospitalized, pursuant to her treating physician's orders. That Bonnie Taylor exhibited profound physical effects of the stroke is uncontested. Throughout her confinement, she was paralyzed on the right side of her body; she was nourished either through a stomach tube or through intravenous feedings; she required physical therapy and special attention to avert respiratory complications. Her condition was on occasion exacerbated by significant blood pressure fluctuations, seizures, and tremors. Prudential does not dispute the description of Mrs. Taylor's condition. Nonetheless, the insurer denied the claims on Bonnie Taylor's OU and OB policies because its claims examiner determined that the insured's hospitalization was medically unnecessary.

## DISCUSSION

### Bad Faith

■ Before the district court, Elmer Taylor alleged that Prudential proceeded in bad faith by denying his mother's claims under the OU and OB policies. In recognizing the tort of bad faith, the Alabama Supreme Court has said that the tort arises in situations exhibiting either no lawful basis for the refusal to pay coupled with actual knowledge of that fact, or intentional failure to determine whether any lawful basis for such refusal exists. *Chavers v. National Security Fire and Casualty Co.,* 405 So.2d 1, 7 (Ala.1981). In *National Security Fire and Casualty Co. v. Bowen,* 417 So.2d 179 (Ala.1982), the same court detailed the elements which a plaintiff must prove in a bad faith case:

(a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the

insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. *Id.* at 183.

In the case at bar, summary judgment on the issue of bad faith is inappropriate because genuine issues of material fact remain unresolved in regard to three of the elements necessary to prove a bad faith claim. Prudential admits that it relied on Medicare's determination that Mrs. Taylor's continued hospitalization was not medically necessary and rejected the treating physician's opposing view. Especially since Prudential adopted the position of Medicare, a financially interested party,[1] whether Prudential's decision represents a reasonably legitimate or an arguable reason for refusal to pay Mrs. Taylor's claim is appropriately a question for the trier of fact. Likewise, a jury should decide whether Prudential's balancing of the determination of Medicare with the opinion of the treating physician discharged Prudential's duty to obtain actual knowledge of either a legitimate or an arguable reason to refuse payment under the OU and OB policies. Finally, a trier of fact should ascertain whether Prudential's reliance on Medicare's position rises to the level of the insurer's intentional failure to determine the existence of a lawful basis for its refusal to pay. These three issues of material fact deserve further consideration.

■ In reversing the summary judgment rendered by the district court, we specifically do not determine whether the facts of this case are adequate to support the heavy burden of proof required by the tort of bad faith in Alabama. Further, this court recognizes that in the past Alabama has required a directed verdict for the plaintiff on insurance contract claims as a prerequisite to finding liability on a bad faith claim. *National Savings Life Insurance Co. v. Dutton*, 419 So.2d 1357 (Ala.1982). In the present case, the district court denied the defendant's motion for a directed verdict at the close of plaintiff's case. The absence of a directed verdict for the plaintiff on the contract claim in the initial trial is not determinative of the bad faith issue on remand, however, because the bad faith issue was decided before trial by a summary judgment. When the extraordinary nature of a case presents facts about which reasonable persons could not disagree, a jury may find an insurer guilty of bad faith, ill-will, oppression, and malice even without a directed verdict on the contract claim. *See Aetna Life Insurance Co. v. Lavoie*, 470 So.2d 1060, 1072 (Ala.1984). We do not determine whether the facts of this case are of the extraordinary nature required by *Lavoie* as the basis for a bad faith determination.

## Contract

■ Prudential's position is that under applicable standards of medical practice for treatment of patients in Mrs. Taylor's condition, hospitalization of the insured was not medically necessary during the disputed periods. Prudential contends that the testimony of the treating physician is inadequate to establish the applicable standards of medical practice. Although Prudential relies on expert witnesses familiar with national standards of medical practice in order to counter the medical opinion of the treating physician, the expert opinions were rendered from medical records over a year after Mrs. Taylor died. The assertion that the expert witnesses' opinions are a more accurate assessment than that of the treating physician in regard to either medical standards or the medical necessity of Mrs. Taylor's hospitalization approaches a frivolous argument. Prudential presents no evidence that the treating physician was unqualified or that the insurer attempted to seek another medical opinion until long after Mrs. Taylor died. We agree with the trial court's conclusion that the treating physician was "as well qualified as the physicians from other areas as to the applicable medical standards for the treatment of Mrs. Taylor." (CR. 341).

---

1. Although Medicare is not a party to this lawsuit, the financial interests of Medicare and Prudential are similar. Both parties stand to benefit from a finding that a patient's hospitalization is not medically necessary and, therefore, that a claim need not be paid.

The trial court instructed the jury to look reasonably at the term medical necessity and to determine its meaning. The record shows that the court also appropriately charged the jury to construe any ambiguities found in the insurance contracts in favor of the insured. We find that the jury's verdict on the contract claims is consistent with the weight of the evidence.

For these reasons, the judgment of the district court regarding the contract claim is AFFIRMED. The summary judgment on the bad faith claim is REVERSED and REMANDED for further proceedings consistent with this opinion.