This case grew out of the following facts:
In November 1978, Oren Wilkins and his wife, Margie Nell Wilkins, purchased a 1979 Ford pick-up truck and financed it through Federated Guaranty Financial Corporation (Financial). The couple also bought a credit life insurance policy on the life of Oren Wilkins through Financial's "sister" corporation, Federated Guaranty Life Insurance Company (Guaranty Life). This policy assured payment of any balance owed on the truck in the event of Oren Wilkins's death before the truck was fully paid for.
Oren Wilkins operated a small logging company near Addison, Alabama. On January 17, 1979, his son Tony found him dead at a remote work site. Tony had last seen his father at work that day around 1:00 p.m., when Tony left to move some logging equipment. When he returned, he found his father lying on the ground beside the pick-up truck; a 12-gauge shotgun, belonging to Oren Wilkins, was positioned near the body. Tony drove to Addison to notify the authorities.
Jerry Thorn, an investigator for the Winston County Sheriff's Department, investigated the death. Thorn observed a gunshot wound approximately two inches above Wilkins's heart, and the shotgun lying across the body. Based upon his observations at the scene, Thorn, in his incident report, listed Wilkins's death as a suicide.
J.R. Nichols, Winston County coroner, arrived at the scene a short time later and noted powder burns on Wilkins's outer clothing, inner clothing, and the skin of the chest.
A coroner's inquest was then convened to determine the cause of Wilkins's death. There were no witnesses to the shooting, and a heavy rain fell before investigators arrived on the scene. Nichols, in his coroner's report, listed the cause of death as "self-inflicted." The coroner's jury, however, unable to establish the exact cause of death, ruled Wilkins's cause of death as "undetermined." The original death certificate issued for Wilkins, therefore, showed the cause of death to be "undetermined." In February 1979, Nichols wrote the State Health Department, Division of Vital Statistics, stating that, upon further study of the toxicology report, he had "come to the conclusion that the cause of [Wilkins's] death was self-inflicted."
On August 24, 1979, Guaranty Life filed in Winston County Circuit Court a declaratory judgment action, Civil Action No. CV-79-63, against Margie Nell Wilkins, as administratrix, and Financial, requesting the trial court to specify the rights and obligations of Guaranty Life under the credit life *Page 12 
policy; the insurer also sought a declaration as to the cause of Wilkins's death. Mrs. Wilkins counterclaimed, seeking recovery (1) on the credit life insurance policy, and (2) on Guaranty Life's alleged bad faith refusal to pay her claim. On motion of the insurer, the trial court dismissed Mrs. Wilkins's counterclaim.
On October 10, 1980, Mrs. Wilkins filed the present action, Civil Action No. CV-80-101, against Guaranty Life in Winston County Circuit Court. Her complaint, identical to the counterclaim she filed previously in the declaratory judgment action, again sought recovery under the policy and damages for Guaranty Life's alleged bad faith refusal to pay. The insurer's motion to dismiss the complaint, on the ground that the declaratory judgment action mooted plaintiff's cause of action, was denied by the trial court. In its answer, Guaranty Life denied all liability, based on its assertion that Oren Wilkins died as a result of a self-inflicted gunshot wound, and that the policy issued to Oren Wilkins specifically excluded coverage for death caused by suicide:
 "EXCEPTIONS. The Disability Insurance issued under this policy does not apply when . . . the injury is intentionally inflicted by the Insured. . . .
". . .
 "SUICIDE — Self destruction within one year from the Date of Loan, whether the Insured be sane or insane, is not a risk assumed by the Company, but in such event the Company will return the premiums actually paid hereon."
The insurer requested and the court refused a directed verdict on the bad faith claim at the close of the plaintiff's case. Although Guaranty Life's lawyer asked for a summary judgment on the ground that the plaintiff had failed to prove the claim, it is clear from the record that the trial court treated the motion as one for directed verdict — and properly so.
The insurer put on its case and at the conclusion of all of the evidence, the court submitted both the contract claim and the tort claim to the jury. The jury returned a general verdict in favor of the plaintiff and against the insurer for $135,000. After its motion for JNOV was denied, Guaranty Life appealed. We affirm in part and reverse in part.
We agree with Guaranty Life's argument that the trial court erred in refusing its motion for directed verdict on the claim alleging the bad faith refusal to pay the insurance proceeds. As noted, the policy expressly excluded coverage if the death of the insured resulted from suicide. There was evidence from which it could be forcefully argued that the insured took his own life. The insurer had a right to have this issue determined and sought to do so by filing a declaratory judgment action. It also had a right to refuse payment of the claim, based upon the information it had, without subjecting itself to tort liability. The evidence put on by the plaintiff fell short of that required to make out a tort claim.
In National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357
(Ala. 1982), citing National Security Fire Ins. Co. v. Bowen,417 So.2d 179 (Ala. 1982), we said:
 "`An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. Chavers v. National Security Fire Ins. Co., Ala., 405 So.2d 1 (1981). No lawful basis "means that the insurer lacks a legitimate or arguable reason for failing to pay the claim." Gulf Atlantic Life Ins. Co. v. Barnes, Ala. 405 So.2d 916 (1981). When a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid.
 "`Under those authorities the plaintiff in a "bad faith refusal" case has the burden of proving:
 "`(a) an insurance contract between the parties and a breach thereof by the defendant;
 "`(b) an intentional refusal to pay the insured's claim; *Page 13 
 "`(c) the absence of any reasonbly legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "`(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "`(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "`In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 "`The "debatable reason" under (c) above means an arguable reason, one that is open to dispute or question.'"
419 So.2d at 1361.
The plaintiff did not show by the evidence that no debatable or arguable reason existed justifying the insurer's denial of the claim. To the contrary, the evidence established that there was a legitimate question of suicide and, therefore, a legitimate question of liability on the contract claim.
Whether an insurance company is justified in denying a claim under a policy must be judged by what is before it at the time the decision is made. Dutton, supra. Here, the company had before it the following: The report of the county coroner, listing the cause of death as a "self-inflicted gunshot wound; a finding by a coroner's jury that the cause of death was "undetermined;" and the incident report of a sheriff's investigator, listing Wilkin's death as a "suicide." Circumstantial evidence gathered at the scene was inconclusive, neither confirming nor ruling out suicide as a possible cause.
Based upon the information available to the company at that time, Guaranty Life notified Mrs. Wilkins by letter, dated March 28, 1979, that it was denying coverage on the basis of the suicide exclusion, and refunded $35.34, the premiums paid to that date.
Clearly, under the present facts, a reasonable basis existed for refusal of the claim and would, thus, defeat a tort action for bad faith refusal to pay the claim.
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fall and should not be submitted to the jury."
Dutton, supra, at 1362. Such is the case before us. Under these facts, Guaranty Life sought and was entitled to a directed verdict on the tort claim. Therefore, the trial court erred in denying its motion for a JNOV on that claim.
The action on the contract, as the insurer recognized, was properly submitted to the jury. Whether the insured committed suicide was a question of fact. There were facts which would support a finding that he did, but there were other circumstances, including a legal presumption against suicide, that left the final resolution of the issue to the jury. The trial court properly charged the jury that the burden was on the insurer to reasonably satisfy it from the evidence that the cause of death was suicide. The insurer raised suicide as an affirmative defense. It failed to convince the jury on this issue, it being its burden to do so.
It could be argued that, since the jury returned a general verdict for the plaintiff, a new trial should be ordered on the contract claim. We hold that a new trial is not necessary on that count because the trial court charged the jury that it should consider the tort claim only if it were convinced by the evidence that the insurer was liable on the contract claim. It, *Page 14 
therefore, necessarily found for the plaintiff on that count. Because there was a fact question as to the plaintiff's right to recover on the contract count, the trial court should have, as just noted, directed a verdict for the insurer on the tort claim. That it did not do so, however, does not, under the facts of this case, require a new trial of the contract claim.
The insurer also argues that the trial court erred in not permitting it to first try to a conclusion its declaratory judgment action, CV-79-63, filed prior to Mrs. Wilkins's suit. Guaranty Life asserts that the plaintiff's claim for bad faith refusal was actually a compulsory counterclaim to its declaratory judgment action and could not be brought as the separate action CV-80-101. Further, the company points out that the counterclaim filed by Wilkins, identical in language to the present action and dismissed by the trial court, now bars her present claim on the ground of res judicata.
The insurer is correct in its argument that the trial court should have adjudicated the declaratory judgment action and that it erred in striking the counterclaim. We recently held that a claim for tort of bad faith refusal is properly brought as a compulsory counterclaim to a declaratory judgment action by the insurer, and that failure to do so will bar a subsequent tort claim for bad faith. Safeco Ins. Co. v. Sims,435 So.2d 1219 (Ala. 1983).
As we held in Safeco, supra, a counterclaim seeking damages for the bad faith refusal to pay an insurance claim is a compulsory counterclaim under Rule 13 (a), Alabama Rules of Civil Procedure, and it was, therefore, error to strike the counterclaim in the declaratory action. Federated's argument that the counterclaim is compulsory and is now barred and cannot now be asserted by way of a separate lawsuit is inconsistent with its motion to strike the counterclaim, which the court granted. We agree that it was error to strike the counterclaim, but it would serve no useful purpose to retry the only issue in this case — whether the insured's death was by suicide. That issue has been tried. Accordingly, a new trial for resolution of that issue is unwarranted.
Finally, we decline to order a new trial to require that Federated Guaranty Financial Corporation, the beneficiary of the credit life policy, be added as a defendant. On remand, the trial court will fashion an order consistent with our holding that the insurer is liable to the extent of the outstanding balance on the debt at the time of the insured's death. That sum is to be remitted to the creditor and beneficiary under the policy, and the debt is to be satisfied, if Mrs. Wilkins is to retain the truck.
The judgment on the tort claim is reversed. The judgment on the contract claim is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR ENTRY OF JUDGMENT CONSISTENT HEREWITH.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.