Appeal from a summary judgment in favor of the defendant, Commercial Union Insurance Company, Inc. (Commercial Union), in a bad-faith-refusal-to-pay case brought by plaintiff, B. Keith Chandler d/b/a Keith Chandler Construction Company. We affirm.
The present lawsuit is an outgrowth of a prior action also brought by plaintiff in which plaintiff sought to have reformation of an insurance policy issued by this defendant in order to obtain coverage on plaintiff's truck, which had sustained fire damage.
Chandler, a construction contractor, was engaged in installing water and sewer lines and doing related work in a Madison, Alabama, subdivision. He owned three trucks; however, the truck in question was the one used on this job. This truck, a 1979 Ford LNT dump truck, was purchased for $27,334.70. Plaintiff had a heavy duty rock bed installed on it, costing $54,000.00. He also had the engine and transmission rebuilt. The truck caught fire and was severely damaged while plaintiff was operating it on the job.
Prior to the fire, the plaintiff had obtained insurance coverage on a 1978 Ford F-800 dump truck from Commercial Union. After plaintiff made a claim on his fire loss, Commercial Union denied coverage. That denial led to plaintiff's first action, in which he sought a reformation of the policy and payment under the policy. Commercial Union answered and counterclaimed in that action, asking for a judgment declaring that the destroyed vehicle was not covered under the policy or, in the alternative, asserting that the truck was destroyed intentionally by Chandler himself or at his direction. The circuit court entered a decree reforming the policy to include the burned truck, and the remaining issues were tried to a jury, which awarded Chandler $25,145.00 in damages. No appeal was taken from that judgment. The damages awarded were paid into court and in due course paid to the plaintiff.
Thereafter, plaintiff initiated this present action, alleging one count in bad faith refusal to pay a lawful claim. This complaint was later amended by adding a count in fraud. We reproduce these allegations below:
"COUNT ONE
 "1. On or about the 30th day of January, 1981, the plaintiff and the defendant entered into a policy of insurance whereby the defendant insured the plaintiff's motor vehicle for $28,000 for, among other things, damage or loss by accidental fire.
 "2. On or about August 13, 1982, while the insurance policy was in full force and effect and after performance of all conditions precedent by the plaintiff, the plaintiff's said vehicle caught fire and was damaged as a result of a mechanical failure.
 "3. The defendant, as a result of its bad faith performance or failure to perform *Page 246 
the said contract, failed and refused to pay the plaintiff's claim as required by the said policy of insurance.
 "4. Plaintiff avers that the said wrongful and bad faith refusal to pay the said claim was malicious, oppressive, fraudulent and libelous.
 "5. Although originally the question of the defendant's requirement to perform according to the said contract might have been fairly debatable as a result of the said vehicle being incorrectly described in the said policy, this question was judicially determined by a decree reforming the said contract on or about May 14, 1982, at which time the plaintiff's claim was immediately and obviously payable according to the terms of the reformed contract.
 "6. Plaintiff avers that after the decree of reformation, the defendant had actual knowledge of the facts which required the defendant's performance, or the defendant intentionally failed and refused to properly investigate the claim to determine whether there was any lawful basis for the defendant to refuse to perform, and the defendant in bad faith wrongfully refused to pay the plaintiff's claim.
 "7. Plaintiff further avers that the only fairly debatable question concerning defendant's right to refuse to perform, if any, was created by the defendant's misconduct, through the fraudulent, willful, and intentional tampering with the insured property after the loss and other evidence so as to create and invent an illusion that the fire which resulted in the loss was deliberately set, when in fact the fire was accidental. But for the defendant's said tampering, no question regarding the defendant's liability exists or has existed since the decree of reformation, and even the illusion of the question created by the defendant's misconduct is in direct conflict with all of the eyewitness testimony concerning the origin of the fire.
 "8. The bad faith handling of the plaintiff's claim has caused the plaintiff to suffer extreme hardship in earning a livelihood, has caused him to incur unnecessary legal fees and expenses, has caused him to suffer an added claim against him for accrued interest from the loss payee, has caused him to suffer mental anguish and emotional distress, and has damaged the plaintiff's name and reputation in the community.
 "WHEREFORE, plaintiff demands judgment against the defendant in the sum of $1,500,000.00 punitive and compensatory damages plus costs."
"AMENDMENT TO COMPLAINT
 "Comes the Plaintiff and amends the complaint by adding the following:
"COUNT TWO
 "9. Plaintiff realleges all of the allegations of COUNT ONE as fully as if set out herein.
 "10. On or about March 29, 1982, the defendant, through pleadings, impliedly represented to the plaintiff and to the Court that the reason the defendant did not pay the plaintiff's claim for fire loss covered under the defendant's insurance policy was because, inter alia, the defendant had evidence that the plaintiff caused the fire by intentional act.
 "11. This representation was false and the defendant knew the representation was false but made the representation with the intention that the plaintiff and the Court rely upon it.
 "12. At some time prior to the making of this representation, the defendants did knowingly and fraudulently create false evidence to support the false representation by taking glass fragments to a chemist and representing to the chemist that the fragments came from the scene of the plaintiff's fire loss.
 "13. The defendant further concealed [its] fraudulent acts by making the chemist unavailable to the plaintiff's counsel for questioning until October 4, 1982, which was the day of trial on the plaintiff's complaint seeking damages for breach of the insurance contract.
 "14. Only upon the taking of the chemist's deposition on or about October *Page 247 
4, 1982, did the plaintiff discover, for the first time, that the defendant had fraudulently created evidence in order to support [its] misrepresentation.
 "15. The plaintiff was forced to rely upon the misrepresentation in that the plaintiff was unable to discover the fraudulent creation of evidence in time to aver in good faith, prior to the trial, that the defendant had no `fairly debatable question' regarding coverage of the plaintiff's fire loss by the defendant's insurance policy.
 "16. The plaintiff was damaged by his reliance upon the misrepresentation in that his attempt to amend his complaint at the trial on the breach of contract was denied by the honorable trial court judge as being untimely. The plaintiff was therefore caused to expend additional court costs and attorneys' fees to bring the instant action in a separate lawsuit.
 "17. Plaintiff avers that the misrepresentations of the defendant, and the fraudulent creation of false evidence to support those representations, constitute gross, oppressive, malicious, intentional, and deliberate acts of fraud against the plaintiff.
 "WHEREFORE, Plaintiff demands judgment against the defendant in the sum of $1,500,000.00 punitive and compensatory damages plus costs."
Commercial Union moved for summary judgment based upon the pleadings, decree of reformation, and jury verdict and judgment in the first action, the pleadings in this second action, and a memorandum of law. Plaintiff opposed the defendant's summary judgment motion with references to the pleadings, together with the affidavit of David H. Meginniss and the deposition of Randall C. Stafford. The trial court treated the motion as directed to Count One and, after a hearing, denied the motion. Following a pretrial conference, Commercial Union filed another motion for summary judgment, stating these grounds:
"I.
 "For that the complaint of the plaintiff and the amendment thereto bases its factual allegations upon the defendant knowingly and fraudulently creating false evidence by taking glass fragments to a chemist namely one Randall Stafford obviously creating false evidence to support the defendant's allegation that the fire was intentionally set. The affidavits of Randall Stafford (Exhibit `1' attached); Greg Rowe (Exhibit `2' attached); Gerald Bartig (Exhibit `3' attached); Russell Jackson (Exhibit `4' attached); and Dennis Billings (Exhibit `5' attached) [all exhibits omitted in this opinion], as well as the testimony offered in civil action CV81-1255S affirmatively show that there was no tampering with any evidence by anyone connected with the defendant. The testimony taken in the trial of civil action 81-1255S and the affidavits that are attached to this motion for summary judgment affirmatively show that no tampering with any evidence occurred as claimed by the plaintiff. The plaintiff has failed to show any factual basis for the claims as set out in his complaint and amended complaint.
 "Further, the affidavit of David Meginniss and the memorandum in opposition of the first summary judgment motion that was filed in this case filed on September 9, 1983, affirmatively show that the testimony of Randall Stafford is the basis for the plaintiff's complaint and claims. All of the claim of the plaintiff is based upon Stafford's testimony as to what temperature the gasoline residue in the samples would dissipate.
 "The testimony of Mr. Stafford affirmatively shows at Page 16 that he is guessing as to the temperature reached in the truck and that it is a speculation on his part as to what temperature the truck reached. Further, the testimony of Stafford at Page 18 of the deposition submitted in support of opposition to the summary judgment clearly shows that there could possibly be a residue left if the truck fire did not burn evenly at a high temperature. The testimony of *Page 248 
Stafford, which is the basis for the plaintiff's claim, is based on hypotheticals and speculation and not upon clear facts. It is obvious from a review of the testimony of Mr. Stafford that the plaintiff's complaint has no factual basis to sustain his claim that evidence was fraudulently planted or placed in the subject vehicle.
"II.
 "A. As further grounds for the motion for summary judgment, the defendant would ask the court to take judicial notice of the court file in civil action 81-1255 and all the pleadings thereto. The defendant would further submit the transcript of the testimony in civil action CV81-1255S as a basis for the motion for summary judgment. The defendant would assert that in civil action CV81-1255 that no amendment alleging bad faith was filed or attempted to be filed as a matter of record in that action. It affirmatively appears from the affidavit of David Meginniss which was filed in the instant cause on September 9, 1983, that an amendment was attempted but was withdrawn by the plaintiff's counsel. The defendant would assert that under the case of Safeco Insurance Company of America vs. Sims, [435 So.2d 1219 (Ala. 1983)], the filing of a claim for bad faith or fraud would be a compulsory claim to be brought in the original action filed by the plaintiff in civil action CV81-1255S and that the failure of the plaintiff to assert his claim in that action under the doctrine of Safeco and under Alabama Rules of Civil Procedure, 13 (a), would preclude the instant action.
 "B. As further grounds for the motion for summary judgment the defendant would assert the statute of limitations and state that the original claim of the plaintiff was filed on December 16, 1981, in civil action 81-1255S with the defendant making an appearance on January 25, 1982. It is apparent from reviewing the pleadings that the plaintiff in the instant action could have discovered by discovery in civil action 81-1255S what he is claiming he did not discover until October 5, 1982, and had available to him all of the discovery mechanisms in the Alabama Rules of Civil Procedure to enable him to ascertain the basis for the denial.
 "It affirmatively appears from the court file in CV81-1255S that the plaintiff would be barred from the present action because of the statute of limitations.
 "C. The defendant would further assert that the elements of bad faith as set out in National Savings Life Insurance Company vs. Dutton, [419 So.2d 1357
(Ala. 1982) ], and Federated Guaranty Life Insurance Company vs. Wilkins, [435 So.2d 10 (Ala. 1983) ], are not present in the instant case. Further, the defendant would assert that under the Dutton case, the Alabama Supreme Court has made it clear that where there is a factual controversy which has to be made by a jury determination such as was done in CV81-1255S, there can be no bad faith.
 "WHEREFORE, defendant Commercial Union Insurance Company moves for a summary judgment on the foregoing separate and several grounds. The defendant offers in support of the summary judgment motion all of the affidavits as set out above as well as the court file in CV81-1255S and the transcript of the testimony in CV81-1255 as well as the pleadings that are offered in the instant cause."
This motion was also heard, after which the trial court granted summary judgment as to both counts. Plaintiffs motion to vacate the summary judgment was denied. This appeal followed.
In granting summary judgment for the defendant, the trial court did not specify its reasons. On this appeal, the parties have presented the same issues as those presented below on the motion for summary judgment. We need not examine each of these because we find that the trial court's grant of summary judgment for the defendant was proper; the claims asserted *Page 249 
by plaintiff in the second action are barred by res judicata in that the second action involved claims which could and should have been litigated in the first action.
The record in this case discloses that during the trial of the contract action plaintiff approached the trial judge (not the judge who tried the present action) concerning the propriety of filing an amendment alleging bad faith. This is shown by the trial court's affidavit:
 "On October 4, 1982, the case was called in accordance with the docket, a jury was struck, and the parties began taking testimony before the jury. The proceedings lasted all day on October 5, 1982. On October 6, 1982, the trial was due to continue at 9:00 A.M. Before proceeding, however, . . . counsel for the plaintiff requested to see me and the counsel for the defendant in chambers. I granted his request, and I met in chambers with [counsel for all parties]. In that meeting, [counsel for plaintiff] presented to me an `Amendment to Complaint to Conform to Evidence.' He requested me to allow him to amend his complaint to interject a bad faith issue. (The document attached to this affidavit as Exhibit `A', according to my best memory, is a true and correct copy of the amendment offered by [counsel for plaintiff].) [Exhibit omitted from this opinion.]
 "Because we were already in the middle of a trial before a jury, and because I did not think it would prejudice the rights of the plaintiff, I instructed [counsel for plaintiff] that I believed he could and should bring his bad faith claim in a separate proceeding. It was my belief that interjecting a new issue of this sort in the middle of the trial would be inconvenient for the Court and confusing to the jury. At that time, according to my interpretation of Alabama law, there was nothing that would prevent the plaintiff from seeking the relief alleged in the amendment in a separate lawsuit. The lawyers for the defendant objected to the amendment, so I refused to permit the amendment and instructed [counsel for plaintiff] to withdraw it. Pursuant to my ruling and to my instructions, [counsel for plaintiff] withdrew the amendment and the trial proceeded to a verdict in favor of the plaintiff on the claim on the policy."
This Court has held that a claim for bad faith is a compulsory counterclaim where an insurance company has filed an action for declaratory judgment against an insured. Safeco Ins.Co. of America v. Sims, 435 So.2d 1219 (Ala. 1983); FederatedGuaranty Life Ins. Co. v. Wilkins, 435 So.2d 10 (Ala. 1983). A consideration of Sims and Wilkins leads us to conclude that plaintiff's bad faith claim should have been asserted in his first action. Granted, it appears from the affidavit above that plaintiff attempted to amend his complaint to allege bad faith, but was thwarted in his effort by the trial judge. Clearly, this was error on the part of the trial judge. See Rule 15 (b), A.R.Civ.P. ("An amendment shall not be refused under subdivision (a) and (b) of this rule solely because it adds a claim or defense, changes a claim or defense, or works a complete change in parties. The court is to be liberal in granting permission to amend when justice so requires."). Cf.Wilkins, 435 So.2d at 14 (noting that the trial court erred in striking a counterclaim for bad faith brought in the insurer's action for declaratory judgment).
It must be noted, however, that no proffer of or ruling on this amendment appears in those portions of the record from plaintiff's first action which have been made a part of the record on appeal in the present action. Thus, it appears that the issue concerning the denial of the amendment would not have been properly preserved for our review had plaintiff appealed in the first action. Plaintiff's proper course of action would have been to offer the amendment and obtain a ruling for the record, and subsequently appeal that ruling if adverse.
Under the circumstances involved in this case, the judgment for the plaintiff in the first trial became res judicata as to the *Page 250 
claim for bad faith refusal against Commercial Union. As this Court has not infrequently stated, the proper inquiry is whether the issue was actually litigated or whether it could have been litigated. Wheeler v. First Alabama Bank ofBirmingham, 364 So.2d 1190 (Ala. 1978); McGruder v. B LConstruction Co., 331 So.2d 257 (Ala. 1976); McCormick v.McCormick, 221 Ala. 606, 130 So. 226 (1930). In this case, both the breach of contract claim, which was the subject of plaintiff's first action, and the bad faith and fraud claims, which were the subjects of this second action, all arose from a single act, the refusal to pay the proceeds of the policy. Thus, there was only one cause of action, and the first judgment became a bar to the second action. Cf. Geer Brothers,Inc. v. Crump, 349 So.2d 577 (Ala. 1977), and Sessions v. JackCole Company, 276 Ala. 10, 158 So.2d 652 (1963). The trial court could not, by agreement with counsel or otherwise, abrogate the application of this rule to this case. See, e.g.,Chambers County Commissioners v. Walker, 459 So.2d 861 (Ala. 1984).
This case is readily distinguishable from Chavers v. NationalSecurity Fire Casualty Co., 456 So.2d 293 (Ala. 1984), in which this Court held that a bad faith claim brought subsequent to the conclusion of an action on the policy was not subject to summary judgment based on res judicata, where it was not clear when the plaintiff learned of the insurance company's alleged bad faith.
Plaintiff Chandler asserts that he did not become aware that he might have a claim for bad faith refusal to pay until the defendant pleaded arson as a defense. The fraud claim asserted by plaintiff also stems from defendant's defense of arson: Plaintiff has alleged that defendant impliedly represented that plaintiff's claim was not being paid because defendant had evidence that plaintiff intentionally caused the fire, that this representation was false, that defendant made the representation knowing it was false and with the intention that plaintiff and the court rely upon it, and that the defendant fraudulently created false evidence to support the false representation. As a result, plaintiff alleges, he "was forced to rely upon the misrepresentation in that the plaintiff was unable to discover the fraudulent creation of evidence in time to aver in good faith, prior to the trial, that the defendant had no `fairly debatable question' regarding coverage of the plaintiff's fire loss by the defendant's insurance policy."
Plaintiff maintains that he did not discover the fraudulent creation of evidence until he deposed Stafford, the chemist who analyzed glass fragments taken from the truck, and, further, that he could not depose Stafford until the day of trial because the defendant had made him "unavailable." That is, although Commercial Union answered the complaint and raised the defense of arson on or about March 29, 1982, plaintiff did not depose Stafford until October 4 or 5, 1982. However, the plaintiff addressed interrogatories to the defendant and received the defendant's answers on or about May 10, 1982, some five months before trial of the first case. Those answers revealed the name and address of Stafford's company, and, in fact, mentioned Stafford's name in connection with a "gas chromatograph." Plaintiff's use of interrogatories and his taking of other depositions clearly shows that plaintiff could have obtained other information regarding Stafford and also counters any notion that defendant did not make Stafford "available" until trial ensued. Nor does the record reveal that plaintiff requested a continuance upon discovering the alleged bad faith. Hence, it cannot be concluded on the record that defendant somehow shielded a bad faith claim from the plaintiff.
To the contrary, it is clear from plaintiff's own arguments that he was aware of both his bad faith claim and his fraud claim at least by the time of trial on his contract claim. Although both claims may have matured after he filed his original complaint, the amendment provisions of Rule 15 (b) and (d), A.R.Civ.P., were available to him. As we pointed out above, plaintiff did indeed attempt to amend at the time of trial, *Page 251 
but failed to properly preserve and appeal the ruling of the trial court.
This case is also distinguishable from Federated GuarantyLife Ins. Co. v. Wilkins, 435 So.2d 10 (Ala. 1983). In Wilkins, the insurer filed an action for declaratory judgment and the plaintiff counterclaimed, alleging bad faith refusal to pay. This counterclaim was struck by the trial court on the motion of the insurer. The plaintiff then filed a separate action for bad faith, upon which she prevailed. On appeal, the insurer asserted that plaintiff's counterclaim, "identical in language to the present action and dismissed by the trial court, now bars her present claim on the ground of res judicata." 435 So.2d at 14. Although this Court reversed the judgment against the insurer on the bad faith issue, we noted:
 "[A] counterclaim seeking damages for the bad faith refusal to pay an insurance claim is a compulsory counterclaim under Rule 13 (a), Alabama Rules of Civil Procedure, and it was, therefore, error to strike the counterclaim in the declaratory action. Federated's argument that the counterclaim is compulsory and is now barred and cannot now be asserted by way of a separate lawsuit is inconsistent with its motion to strike the counterclaim, which the court granted. . . ." Id.
However, the insurer's declaratory judgment action in Wilkins
was not tried to a conclusion. Where there has been no prior final judgment, the doctrine of res judicata cannot apply. SeeSterling Oil of Oklahoma, Inc. v. Pack, 291 Ala. 727,287 So.2d 847 (1973). In the case presently before us, the plaintiff had a final judgment upon which he, had he properly preserved the issue, could have appealed the trial court's refusal to allow his amendment, regardless of the fact that the defendant objected to the amendment. This same final judgment, however, also now bars his action for bad faith and fraud.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX and SHORES, JJ., concur.
JONES, J., concurs in the result.