This is an appeal by the Insurance Company of North America ("INA") from a judgment in favor of Citizensbank of Thomasville based on a jury verdict finding a bad faith refusal to pay an insurance claim.
Prior to Citizensbank's opening in August 1975, it obtained a banker's blanket bond from INA. The bond included fidelity coverage for fraudulent or dishonest acts of the officers and employees of the Bank. On June 9, 1977, an amendatory rider was added which defined "dishonest or fraudulent acts" to mean acts committed by an employee with the manifest intent to cause the insured to sustain a loss and to obtain financial benefit for the employee or another intended person.
This case stems from the actions of Thomas Branch, the president and chief executive officer of Citizensbank from its opening until June of 1978. Branch was replaced on June 15, 1978, by Eldon Scott, who thereafter filed, on behalf of the Bank, nine proof of loss forms with INA claiming that losses suffered by Citizensbank were the result of fraudulent and dishonest acts by Thomas Branch. These alleged acts included embezzlement of insurance commissions, making fraudulent loans, inside dealing, fraudulent nondisclosure, and submission of intentionally misleading documents. Branch subsequently pleaded guilty to charges of embezzlement and was convicted and put on probation under a suspended sentence in both state court and federal court proceedings.
A brief synopsis of the losses claimed by Citizensbank is as follows:
A. Green Group — Loans to GBW Industries, Inc., a corporation owned by the Green brothers, resulted in a $108,171.45 claimed loss, and in addition, overdrafts in the amount of $46,870.30 from January 5, 1978, to May 4, 1978, and overdrafts in the amount of $48,127.67 from May 5, 1978, to June 3, 1978. GBW Industries, Inc., filed for bankruptcy on May 5, 1978.
B. Ott Group — A loan guaranteed by the Small Business Administration resulted in a claimed loss of $93,662.57, and other loans to the Ott family resulted in claimed losses of $113,811.73. Branch was indicted and convicted of a crime in regard to the S.B.A. loan.
C. Automobile Loans — Richard Hall and Billy Strickland, directors of Citizensbank, each owned an automobile dealership and each had an agreement with the Bank to finance the automobiles for his customers. The Bank claimed a loss of $77,231.42 on the Hall loans and $30,990.26 on the Strickland loans.
D. Direct Claims Against Tom Branch — The Bank claimed Branch embezzled $4,134.51, representing commissions on credit life insurance sold by the Bank. Branch was indicted for this embezzlement, pleaded guilty, and was placed on probation. Also, a loan made to Branch, in violation of Code 1975, §§5-6-25, -26, -29 (repealed), resulted in a claimed loss of $6,373.29.
INA never formally denied any of the claims, but Citizensbank filed this lawsuit on February 5, 1981, to avoid a 24-month contractual bar for bringing suit on the bond, and claimed a "de facto denial." The complaint asked for $606,000 on the contract claim and $2,000,000 on the bad faith claim.
At trial, Citizensbank was able to introduce evidence of only $454,658.34 of contract claim losses. On June 15, 1984, a jury awarded Citizensbank $290,431.77 on the breach of contract count and $866,930.01 on the bad faith count. INA's motion for JNOV or, in the alternative, a new trial was subsequently denied. INA paid the amount of the breach of contract judgment but initiated this appeal from the judgment against it for bad faith and the denial of its motion for JNOV or a new trial.
To recover under a theory of bad faith in Alabama, a plaintiff has a "heavy burden" to prove each element of bad faith. National Savings Life Ins. Co. v. Dutton, *Page 882 419 So.2d 1357, 1361 (Ala. 1982). The elements which must be proved are as follows:
 "`(a) an insurance contract between the parties and a breach thereof by the defendant;
 "`(b) an intentional refusal to pay the insured's claim;
 "`(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "`(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.'"
Mueller v. Hartford Ins. Co. of Alabama, 475 So.2d 554, 556
(Ala. 1985), quoting National Security Fire Cas. Co. v.Bowen, 417 So.2d 179, 183 (Ala. 1982); Dutton, 419 So.2d at 1361.
The test in Alabama for a finding of bad faith is recognized as a "two-tier" test. The first tier of the test "establishes that the tort of bad faith refusal to honor a direct claim arises when there exists no lawful basis for the refusal coupled with actual knowledge of that fact." Gulf Atlantic LifeIns. Co. v. Barnes, 405 So.2d 916, 924 (Ala. 1981).
The second tier of the test involves an "intentional failure to determine whether or not there was any lawful basis for refusal," or, in other words, "whether a claim was properly investigated and whether the results of the investigation were subjected to a cognitive evaluation and review." Barnes, supra.
In the case at bar, both tiers of the two-tier test are being forcefully argued. The appellant, INA, argues that the first tier of the test is not met because the jury only awarded a portion of the contract claim, and therefore that a lawful basis, or at least a debatable reason, must have existed for the refusal of the entire amount being claimed. Furthermore, INA argues that the claims were properly investigated, INA having hired a CPA to perform the investigation and the investigation having entailed over 400 hours of work and the compilation of a 17-volume report.
On the other hand, the appellee, Citizensbank, argues that INA never had a lawful basis for refusing the claims, and that the fact that Thomas Branch was indicted and was found guilty in regard to two of the claims clearly shows the absence of a lawful basis for refusal. Furthermore, Citizensbank argues that the investigation by INA was inadequate and was merely preparation for trial, and that the investigation was designed solely to support its own position. See, Barnes, supra.
 I
The evidence in this case shows that the insurance claims filed by Citizensbank were based on a number of banking transactions. The record indicates that these transactions were financially complex and involved a large number of parties and bank documents. Moreover, the transactions were the products of approximately three years of a bank's continuous daily business operations.
The evidence shows that Citizensbank first gave notice of possible losses to INA on September 9, 1978. The actual date of discovery of all of these losses was stipulated to be February 6, 1979. At that time, Citizensbank began its process of evaluating its own losses and preparing proofs of loss to be filed with INA. On April 11, 1979, Citizensbank filed its first proofs of loss with INA, along with notice that more proofs would be forthcoming. Approximately eight months later, on December 5, 1979, Citizensbank filed its final proofs of loss with INA, along with a supplement to its first filings.
The next 14 months were spent by INA in its investigation and evaluation of the claims filed by Citizensbank. Testimony indicated that INA was in the process of preparing a response to these claims when this lawsuit was filed on February 5, 1981, *Page 883 
and a constructive denial was alleged by Citizensbank.
In Dutton, supra, we attempted to set forth a workable test for the tort of bad faith refusal to pay. There, we stated:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
Dutton, 419 So.2d at 1362. However, because the decision of the insurance company to deny a claim under an insurance policy must be judged by what was before it at the time the decision was made, Federated Guaranty Life Ins. Co. v. Wilkins,435 So.2d 10, 13 (Ala. 1983); Dutton, 419 So.2d at 1362, and because many things may have happened between the time the denial was made and the time the case came to trial, the Dutton
test may be restated to provide as follows: In the ordinary case, in order for the plaintiff to recover on a bad faith claim, the plaintiff must show that if the contract claim had been tried on the date of the denial, the plaintiff would have been entitled to a directed verdict; i.e., information received by the insurer after the date of the denial is irrelevant to the determination of whether the insurer denied at that date in bad faith. Although no express denial was ever made by INA in this case, we will consider that a constructive denial occurred at the end of the 24-month limitation set in the terms of the bond for filing suit to recover under the bond. Therefore, we must examine what was before INA at the time of the constructive denial.
On the date of the constructive denial, INA had in its possession the results of an extensive investigation into these claims by Virgil. Sandifer. Sandifer's testimony indicated that he is a well qualified specialist in the area of bank audits, fraud investigations, and insurance claim investigations. He is licensed both as a C.P.A. and as an attorney.
Sandifer's investigation for INA in this case lasted 10 weeks and consumed over 400 hours of work. A 17-volume report was prepared by Sandifer and was submitted to INA on October 16, 1980. Testimony revealed that INA paid approximately $18,000 for this investigation.
The investigation report included a recommendation by Sandifer that the claims not be immediately paid. INA also contended that the claimed losses were at least partially the result of unsound business judgment; if they were, they would probably not be payable under the bond. For instance, the proof of loss on the Ott group stated that the loss was the result of "fraudulent and financially unsound business practices."
Also, the investigation showed that the Bank's board of directors may have had full knowledge of the loans when they were initially made, and that the board approved of them while the loans remained profitable, but then claimed fraud only when the loans became loss items for the Bank. Such knowledge of the dishonest or fraudulent character of the loans would have activated Section 10 of the bond, which would terminate coverage as to those particular loans. This was substantiated by a sworn petition filed by Citizensbank's successor president, Eldon Scott, in the GBW Industries, Inc., bankruptcy proceeding that stated that the Bank knowingly advanced funds to GBW in an effort to maintain GBW's ability to pay its operating expenses. Also, the report issued by Sandifer to INA included various records of board discussions about the loans, which are now being claimed to be entirely the product of fraud and dishonesty by Mr. Branch.
Furthermore, the bond covered losses incurred through "dishonest or fraudulent acts of an Employee." An amendatory rider defined "dishonest or fraudulent acts" *Page 884 
so as to require "manifest intent" of the employee to cause the Bank a loss and to obtain financial benefit for the employee or another intended person.
The findings of Sandifer, and the recommendation that INA had at the time of the constructive denial, are reflected in the following portion of Sandifer's testimony at trial:
 "Q. From your investigation and study of the documentation and the bank records and the statements of witnesses and things you have done in this case which you have described to the jury, can you tell us if you found anything of a fraudulent or dishonest nature on the part of Mr. Tom Branch?
". . . .
"A. No, sir.
 "Q. From your investigation and study of the documentation and the bank records and the statements of witnesses that have been described, do you find anything that indicated Tom Branch had received any financial benefit from any of the transactions we have talked about here?
"A. No, sir."
The "manifest intent" of Mr. Branch was not easily determinable and was debatable in this case.
A close examination of the record reveals that the majority of the monetary amounts of the claimed losses on the proof of loss forms were significantly different from the amounts claimed at trial. Some of the previously claimed losses were not even claimed at trial because they were concededly not covered under the bond. Other amounts were different because of ongoing mitigation attempts by Citizensbank. Whatever the reason, it is clear that the total amount of the losses being claimed was constantly changing throughout the time between the original filing of the claims and the constructive denial.
For example, of the nine items listed on the proof of loss for the Ott group loans, six of these amounts claimed were different, and the other three amounts were totally withdrawn. The proof of loss form regarding the Strickland automobile loans included approximately 141 separate loans for a total claimed loss of $30,990.26. At trial, $64,414 was claimed on these loans. The proof of loss form regarding the Hall automobile loans claimed a loss of $77,231.42, but only $9,340 was claimed at trial. Immediate payment by INA of these speculative amounts submitted could have resulted in an excessive recovery by Citizensbank.
Although the result of the litigation of the contract claim is not a conclusive factor, Safeco Ins. Co. v. Sims,435 So.2d 1219, 1223 (Ala. 1983), the discrepancies between the proofs of loss and the evidence at trial are noteworthy in this case, because they support INA's contention that it had good reason to question the validity of the claims.
We are of the opinion that Citizensbank was not entitled to a directed verdict on the contract claim, because there was conflicting information on most, if not all, of the individual claims. Thus, there was a genuine dispute about the validity of the claims, and that dispute provided a debatable reason for denying coverage. When a claim is debatable, an insurance company is entitled to debate it. Barnes, 405 So.2d at 924. We believe that in this case, INA was entitled to debate the claim and perhaps was obligated to its stockholders to do so. Looking at the decision in retrospect, if INA had not debated the claims but rather had paid them in full to avoid a possible bad faith action, it would have improperly paid more than $300,000 of corporate funds to Citizensbank.
The dissent to this opinion argues that the claims of Citizensbank should be separated into two categories. However, this approach is not supported by the record or by the briefs of the parties. We have carefully examined the lengthy record in order to determine if the claims could be separated into categories by this Court. We were unable to find any indication that a separation of claims occurred at any point in the development of this case. *Page 885 
For example, the record is very inconclusive on the dates that the claim forms were filed with INA. The forms themselves are not dated, except for a notary's date at the end of each form. These notary dates indicate that proof of loss forms were probably filed on three separate dates during 1979. Testimony elicited at trial as to the filing dates is also very inconclusive. Furthermore, the claim form which was apparently filed first was materially supplemented by a proof of loss form filed with the last claim forms. Branch's indictments and convictions do not operate to separate the claims, because he was indicted and convicted in regard to a loss which was claimed in the first proof of loss filed, and was also indicted and convicted in regard to a loss which was claimed in the last claim forms filed.
All of the claimed losses were the result of only one source, i.e., the dishonest activities of Thomas Branch. It was stipulated that the claims were all discovered by Citizensbank on the same day. The plaintiff elected to include all of the claims together in only one count of the complaint. At trial, all of the claim forms were introduced as only one exhibit, and the claims were never considered in categories during the course of the trial. The plaintiff did not seek a directed verdict on any individual claims, and when the defendant asked for a directed verdict at the close of the plaintiff's evidence, the attorney for INA referred to the claims as "a single claim." This characterization was never contradicted. The jury instructions at the close of the trial did not suggest any separation of the claims into categories. The fact that the jury rendered one general verdict indicates that the jury considered all the claims as a unit. One can only speculate as to which claims the jury found should have been paid, because there was no indication of which contract claims the jury's contract award was based on.
We believe that this Court should decide this case in the posture in which it was presented to us. The parties did not try this lawsuit on the basis of categories of claims, and this Court will not completely revise the posture of this case on appeal. If the record in this case revealed that the claims arose from separate causes which were discovered at separate times, and that the claims had been filed separately and then pleaded separately, then this Court might have found a bad faith failure to pay as to individual claims. However, these are not the facts of the present case. Therefore, we have considered the issue of bad faith as it applies to one single set of claims and not to each individual claim.
 II
Citizensbank alleges that INA intentionally failed to determine whether there was a legitimate or arguable reason to refuse to pay Citizensbank's claims. Because we find that INA had a debatable reason for denying the claims, it is irrelevant whether INA conducted a proper investigation. Gulf AtlanticLife Insurance Co. v. Barnes, 405 So.2d 916 (Ala. 1981).
For the foregoing reasons, we conclude that the trial judge erred in submitting the bad faith count to the jury, and the defendant's motion for a directed verdict on this count should have been granted. We, therefore, reverse and remand.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, BEATTY and HOUSTON, JJ., concur.
JONES and ADAMS, JJ., concur in part and dissent in part, with opinion by JONES, J.