Brenda Carter sought damages from Old American Insurance Company ("insurance company") based on breach of contract, fraud in the inception, and bad faith refusal to pay insurance proceeds. Ms. Carter dismissed her fraud count with prejudice and her contract count without prejudice. The insurance company denied the allegations of the bad faith count and asserted as a further defense the unconstitutionality of punitive damages in Alabama in general, and in particular insofar as such damages are permitted in Alabama for the violation of a covenant of good faith and fair dealing only in contracts between insurers and insureds.[1] The insurance company filed a motion for summary judgment, supported by the pleadings, certain depositions, an affidavit, and the policy of insurance. The trial court granted the insurance company's *Page 919 
motion for summary judgment, and Ms. Carter appealed. We reverse and remand.
The insurance policy provided that the insurance company would pay $50 a day "for hospital confinement resulting from sickness or injury."
"Confinement" was defined in the policy, in pertinent part, as "residence as an inpatient in a hospital. . . . Confinement must be authorized by a physician. It must be medically necessary." "Medically Necessary" was defined in the policy as "resulting in a course of diagnosis or treatment generally accepted by the medical community for the symptoms exhibited, the progress of which is regularly evaluated by a physician. Confinement must not be prescribed primarily for the convenience of the physician or [Ms. Carter]." The policy excluded coverage for "[c]onfinement which is not medically necessary."
While the policy was in effect, Ms. Carter slipped and fell and injured her back; the injury ultimately resulted in her being hospitalized.
Ms. Carter completed and filed with the insurance company, the insurance company's form for "Request for Benefits Fast Paid Plan." This form showed that the claim resulted from an accident that occurred on July 5, 1986, at Ms. Carter's home when she slipped on a wet patio; that she was hospitalized from July 8 to July 15, 1986. The attending physician's statement for accident claim evaluation was completed by Ms. Carter's attending physician, and it verified that Ms. Carter first contacted him on July 7 and that she was hospitalized from July 8 to July 15. The insurance company requested the factsheet, admission record, history and physical examinations, discharge summary, and nurse's daily notes and progress notes from the hospital, which were not all of the hospital records. These, and a copy of "Request for Benefits Fast Paid Plan" were submitted to an independent consulting physician, who determined that Ms. Carter did not require hospitalization. Ms. Carter's claim was referred to Medical Systems, Inc., for a second medical opinion, which was that Ms. Carter did not require hospitalization. The insurance company's policy and procedure were to reach a determination of whether to pay or to deny a claim without making a direct contact with the admitting physician. After the claim was denied, on the basis that "the treatment could have been provided on an outpatient basis," Ms. Carter's physician wrote the insurance company and informed it that attempts had been made to treat Ms. Carter at home, but that her severe pain was not controlled by conservative measures at home. This letter was not submitted to the insurance company's medical consultants, until after the claim had been rejected the second and third times. One medical consultant was not furnished the policy definition of "Medically Necessary" and he indicated that his opinion as to the necessity for the hospitalization would have changed if he had been furnished the admitting physician's letter and the definition of "Medically Necessary."
In Aetna Life Insurance Co. v. Lavoie, 505 So.2d 1050,1052-53 (Ala. 1987), this Court wrote:
 "Chavers v. National Sec. Fire Casualty Co., 405 So.2d 1 (Ala. 1981), promulgated the test for bad faith refusal to honor claims with an insurance company. Justice Beatty, in Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (Ala. 1981), summarized and explained the two tiers of the bad faith tort. The first tier of the Chavers test establishes that the tort arises when there 'exists "[1] no lawful basis for the refusal coupled with [2] actual knowledge of the fact" '. The second tier of the test is an elaboration on the first. If the plaintiff cannot prove actual knowledge, the second tier offers plaintiff the alternative of proving that the insurer intentionally failed to determine whether there was an arguable reason for denying the claim. If the jury finds an intentional failure on the part of the insurer to determine whether there was any lawful basis for the refusal of the claim, it may use that fact in finding 'actual knowledge.' *Page 920 
 " 'The relevant question before the trier of fact would be whether a claim was properly investigated and whether the results of the investigation were subjected to a cognitive evaluation and review. Implicit in that test is the conclusion that the knowledge or reckless disregard of the lack of a legitimate or reasonable basis may be inferred and imputed to an insurance company when there is a reckless indifference to facts or to proof submitted by the insured . . . [T]he insurer's knowledge of the nonexistence of any debatable reasons for refusal would be a question for the finder of fact, i.e., the jury.' 405 So.2d 916, 924.
"Clearly, it was Aetna's responsibility to marshal all of the medical facts with regard to Mrs. Lavoie's claimbefore its refusal to pay. The items which were absent from the file . . . were conceded by Aetna's own witnesses to be of critical importance in the review of any medical file where the reasonable necessity of hospitalization is in issue. . . .
"Dr. Roy Mason Arnold, M.D., one of Aetna's expert witnesses, confirmed the importance of these documents. . . .
 " '[T]he decision of the insurance company to deny a claim under an insurance policy must be judged by what was before it at the time the decision was made.' Insurance Company of North America v. Citizensbank of Thomasville, 491 So.2d 880, 883 (Ala. 1986), citing Federated Guaranty Life Ins. Co. v. Wilkins, 435 So.2d 10 (Ala. 1983). Considering the fact that the decision to deny was made without the benefit of 'critical' sections of the medical file, the jury could find that the claim was not 'properly investigated,' and that there was a 'reckless indifference to facts or to proof.' "
". . . .
 ". . . Once the bad faith has occurred, once the duty to use good faith in considering insurance claims has been breached, the insurance company cannot later seek to justify its denial by gathering information which it should have had in the first place. '[A]n insured purchases insurance and not an unjustified court battle when he enters into the insurance contract.' Gulf Atlantic Life Insurance Co. v. Barnes, 405 So.2d 916, 925 (Ala. 1981)."
The insurance company's justification for determining that hospital confinement was not medically necessary was that Ms. Carter could have been treated as an outpatient. The insurance company, before it denied Ms. Carter's claim initially, had knowledge that the accident occurred on July 5, that the admitting physician was contacted on July 7, and that Ms. Carter was not confined to the hospital until July 8. Before it denied this claim the second and third times, it had received an unsolicited letter from Ms. Carter's admitting physician, which it had not forwarded to its medical consultants. In this letter, Ms. Carter's physician wrote:
 "[Ms. Carter] has continued to complain of back pain since [July 5]. The pain caused her to draw over. She is complaining of a catching sensation and she describes her pain as being severe.
". . . .
 ". . . An attempt was made to treat [Ms. Carter] at home on conservative [sic]. [Ms. Carter] called back the following day stating that she was having severe pain which was not controlled by conservative measures at home."
Was Ms. Carter's hospital confinement one that was generally accepted by the medical community for diagnosis or treatment for the symptoms exhibited? Mrs. Carter's physician testified that it was. One of the insurance company's medical consultants indicated that he would have determined that it was if he had been furnished the letter written by Ms. Carter's physician.
Was Ms. Carter's claim properly investigated? That is for the trier of fact. Were the results of the investigation subjected to a cognitive evaluation and review? That is for the trier of fact. Was there a reckless indifference to facts or to proof submitted by Ms. Carter? That is for the trier of fact.
Clearly, an insurance contract existed between Ms. Carter and the insurance company *Page 921 
and benefits were owed by the insurance company to Ms. Carter under that contract of insurance if Ms. Carter's hospital confinement was "Medically Necessary," as defined by that insurance contract. Clearly, the insurance company intentionally refused to pay those benefits; and there is a genuine issue of material fact as to whether the insurance company intentionally failed to determine whether there was a legitimate or arguable reason to refuse to pay the claim. See,National Sec. Fire Casualty Co. v. Bowen, 417 So.2d 179, 183
(Ala. 1982). Therefore, reviewing the record in the light most favorable to Ms. Carter and resolving all reasonable doubts against the insurance company, as our standard of review of a summary judgment requires us to do, Wilson v. Brown,496 So.2d 756 (Ala. 1986), and, because this suit was filed prior to June 11, 1987,[2] applying the "scintilla of evidence" standard of review, Allstate Enterprises, Inc. v. Alexander, 484 So.2d 375
(Ala. 1985), we conclude that the trial court erred in entering the insurance company's summary judgment as to the bad faith count.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, ADAMS and KENNEDY, JJ., concur.
[1] The insurance company's answer contained the following paragraphs regarding punitive damages:
 "3. The plaintiff's demand for punitive damages violates the due process clause of the Fourteenth Amendment of the United States Constitution in that the claim for punitive damages is vague and [not] rationally related to any legitimate government interests.
 "4. The plaintiff's demand for punitive damages violates the Sixth Amendment of the United States Constitution in that the plaintiff's claim for punitive damages is a claim that is penal in nature, entitling the defendant to the same procedural safeguards accorded to a criminal defendant under the Sixth Amendment.
 "5. The plaintiff's demand for punitive damages violates the self-incrimination clause of the Fifth Amendment of the United States Constitution in that the damages claimed are penal in nature while the defendant is required to disclose documents and/or other evidence without the safeguard against self-incrimination set out in the Fifth Amendment.
 "6. The plaintiff's demand for punitive damages violates the Fifth Amendment of the United States Constitution which prohibits deprivation of life, liberty or property except by due process of law in that the claim for punitive damages is vague and not rationally related to any legitimate government interests.
 "7. The plaintiff's demand for punitive damages violates the rights guaranteed by the United States Constitution in that the claim for punitive damages is penal in nature for which the burden of proof on the plaintiff is less than the 'beyond a reasonable doubt' standard required in criminal cases.
 "8. The plaintiff's demand for punitive damages is unconstitutional under the Constitution of the State of Alabama which provides in Article I, Section 6, that no person shall be deprived of life, liberty or property except by due process of law, in that the punitive damages claimed are vague and not rationally related to any legitimate government interests.
 "9. The plaintiff's demand for punitive damages is unconstitutional under the Constitution of the State of Alabama which provides in Article I, Section 6, that no person shall be deprived of life, liberty or property except by due process of law, in that the punitive damages claimed are penal in nature, requiring a burden of proof on the plaintiff which is less than the 'beyond a reasonable doubt' burden of proof required in criminal cases.
 "10. The plaintiff's demand for punitive damages is unconstitutional under the Constitution of the State of Alabama in that it violates Article I, Section 6, by claiming punitive damages which are penal in nature while the defendant is compelled to disclose documents and/or other evidence without a constitutional safeguard against self-incrimination.
 "11. The plaintiff's claim for punitive damages is unconstitutional under the equal protection clause of the Fourteenth Amendment of the United States Constitution and Article I, Sections 1, 6 and 22 of the Constitution of the State of Alabama in that a covenant of good faith [and] fair dealing is required in all contracts in the State of Alabama but punitive damages are imposed for the violation of said covenant of good faith and fair dealing only in contracts between insurers and insureds in the State of Alabama."
[2] That was the effective date of Act No. 87-184, Ala. Acts 1987.